1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9 DONALD GLASS,                              CASE NO. 1:09-cv-00098-AWI-BAM PC

10                        Plaintiff,         FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING DENYING DEFENDANTS'
11          v.                               MOTION FOR SUMMARY JUDGMENT

12  R. FIELDS, et al.,                       (ECF Nos. 55, 86, 87, 88, 91, 92)

13                        Defendants.        OBJECTIONS DUE WITHIN THIRTY DAYS
                                      /
14

15  **I.    Procedural History**

16          Plaintiff Donald Glass ("Plaintiff") is a state prisoner proceeding pro se and in forma

17  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the

18  complaint, filed January 5, 2009, against Defendants Hamilton, Robles, Logue, and Bautista for

19  excessive force in violation of the Eighth Amendment; Defendants Grandy, Riddle, and McDaniel

20  for deliberate indifference to serious medical needs in violation of the Eighth Amendment; and

21  Defendants Hamilton, Bautista, Logue, Robles, Riddle, Cedillos, Grandy, and McDaniel for

22  retaliation in violation of the First Amendment.[1]  Defendants Bautista, Cedillos, Hamilton, Logue,

23  McDaniel, Riddle, and Robles filed a motion for summary judgment on July 25, 2011.  (ECF No.

24  55.) After receiving several extensions of time and filing a motion for reconsideration, Plaintiff filed

25

26

27          [1]On August 31, 2011, an order issued dismissing the Doe defendant from this action for Plaintiff's failure to
    effect service of process in compliance with Federal Rule of Civil Procedure 4(m).  (ECF No. 58.)  Defendant
28  Grandy has not been served.

1

1    his opposition on February 23, 2012.[2]  (ECF Nos. 86, 87, 88.)  On March 2, 2012, Plaintiff filed a

2    declaration re the motion for summary judgment.  (ECF No. 91.)  After receiving an extension of

3    time, Defendants filed a reply on March 2, 2012.  (ECF No. 92.)

4    **II.    Plaintiff's Cross Motion for Summary Judgment**

5            Plaintiff titles his opposition as a cross motion for summary judgment.  Pursuant to the

6    scheduling order, dispositive motions were to be filed on or before July 25, 2011.  (ECF No. 34.)

7    Plaintiff's motion is untimely, and therefore, the pleading shall only be considered as an opposition

8    to Defendants' motion for summary judgment.

9    **III.   Summary Judgment**

10           **A.    Legal Standard**

11           Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

12   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

13   is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time

14   for discovery and upon motion, against a party who fails to make a showing sufficient to establish

15   the existence of an element essential to that party's case, and on which that party will bear the burden

16   of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to

17   liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150

18   (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing

19   the district court of the basis for its motion, and identifying those portions of the 'pleadings,

20   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

21   which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S.

22   at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

23           If the moving party meets its initial responsibility, the burden then shifts to the opposing

24   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

25   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

26   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

27

28           [2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
     second informational order filed June 4, 2010.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 25.)

1  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

2  material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

3  U.S. at 586 n.11.

4          The parties bear the burden of supporting their motions and oppositions with the papers they

5  wish the Court to consider and/or by specifically referencing any other portions of the record for

6  consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

7  The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo

8  County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

9          **B.      Plaintiff's Evidentiary Objections**

10         In Plaintiff's answer to Defendants' statement of undisputed fact, Plaintiff objects that

11 Defendants did not attach verified declarations to their motion for summary judgment, and

12 Defendants denied his request for a copy of Plaintiff's deposition transcript, and therefore, should

13 be precluded from using any portion of the transcript in their motion for summary judgment.  In his

14 opposition, Plaintiff objects to Defendants exhibits because they were not provided in response to

15 his discovery requests.

16         Federal Rule of Civil Procedure 56(1)(A) states that a fact can be asserted by "citing to

17 particular parts of materials in the record, including depositions, documents, . . . affidavits or

18 declarations," etc.  While affidavits or declarations made on personal knowledge can be used to

19 support a motion for summary judgment, they are not required. Fed. R. Civ. P. 56(c)(4).  Defendants

20 have submitted copies of reports written by Defendants in this action and such evidence is properly

21 considered in deciding a motion for summary judgment.

22         Plaintiff complains that Defendants denied his request for a copy of his deposition transcript.

23 The Federal Rules do not require the government to provide a litigant proceeding in forma pauperis

24 with a copy of his deposition transcript.  Hallford v. California Dep't of Corrections, No. 2:05-cv-

25 00573-FCD-DAD-P, 2010 WL 921166, *1 (E.D.Cal. March 12, 2010); Allen v. Hernandez, No.

26 1:05-cv-00145-AWI-SMS-PC; 2008 WL 4078772, *1 (E.D.Cal. Aug. 29, 2008).  Federal Rule of

27 Civil Procedure 30 provides that the deposition transcript is available to a party upon payment of

28 reasonable charges to the deposition officer.  Plaintiff was able to obtain a copy of his deposition

3

1   transcript by contacting the deposition officer and paying the required fee.

2       Discovery in this action opened on August 10, 2010. (ECF No. 29.) An amended scheduling

3   order issued on September 12, 2010, establishing the discovery cut-off date at May 13, 2011. (ECF

4   No. 34.)  Plaintiff filed motions to amend the scheduling order on March 18, 2011, and May 19,

5   2011, which were denied on September 2, 2011.  (ECF Nos. 39, 50, 59.)  Defendants served

6   responses to Plaintiff's discovery requests on April 14, 2011, approximately one month prior to the

7   discovery cut-off date.  Plaintiff states that the court should compel Defendants to respond to the

8   interrogatories he served.  Plaintiff had the opportunity to file a motion to compel and failed to do

9   so.  The Court denies Plaintiff's untimely request for an order compelling discovery.

10      Based on the foregoing, Plaintiff's evidentiary objections are overruled.

11      **C.    Plaintiff's Facts**

12      On September 12, 2004, Plaintiff filed an appeal alleging that Defendants Hamilton and

13  Robles had been ordered to beat him up and he was in fear for his life and safety.[3]  (Plaintiff's Opp.

14  62, ECF No. 87.)  On September 17, 2004, Defendants Hamilton, Robles, Cedillos, Bautista, and

15  Logue attacked Plaintiff on four occasions, twice in the rotunda area, and twice in C section resulting

16  in Plaintiff's ribs and back being fractured.  (Id.)

17      Defendant Cedillos released Plaintiff from his cell to go to his weekly law library session.

18  After exiting his cell, Plaintiff stopped to have another prisoner sign some documents.  Defendant

19  Hamilton yelled at Plaintiff not to pick up another prisoner's documents.  Plaintiff and Defendant

20  Hamilton got into a verbal confrontation regarding Plaintiff and the documents.  Plaintiff states that

21  he did not attempt to pull away from Defendant Hamilton and did not become disruptive, agitated,

22  belligerent or resistive toward any defendant.  Without provocation, Defendant Hamilton placed

23  Plaintiff in a choke hold, slammed him to the ground, and began punching Plaintiff while they were

24  in the rotunda area.  (Id. at 61.)

25

26

27      [3]Arguments or contentions set forth in a responding brief do not constitute evidence.  See Coverdell v.
    Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence).  Due to
28  their lack of verification, Plaintiff's opposition brief and answer to Defendants' statement of undisputed facts are not
    treated as opposing affidavits.  Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006).

1    While Plaintiff was on the ground Defendants Bautista, Robles, and an unidentified officer

2  began punching, stomping and kicking Plaintiff, Defendant Logue stood by and did nothing.

3  Defendant Hamilton picked Plaintiff up off the ground and slammed Plaintiff against the wall.

4  Defendants Bautista, Robles, and Hamilton grabbed Plaintiff by the seat of his jumpsuit while

5  Defendant Logue and the unidentified officer followed behind.  (Id.)

6    As they approached Plaintiff's cell, Defendant Hamilton prevented Plaintiff from entering

7  and pushed him against the wall.  Defendant Hamilton then told Defendants Bautista and Robles to

8  remove Plaintiff's handcuffs because they were going to beat Plaintiff's ass.  Plaintiff did not slip

9  his handcuffs.  Plaintiff asked Defendants Hamilton, Bautista, Robles, Logue, and the unidentified

10  officer not to remove his handcuffs, and informed them that it would be a violation of the Eighth

11  Amendment for them for them to beat a defenseless prisoner who they had a duty to protect.  (Id. at

12  62.)

13    Defendant Hamilton stated that he had told Plaintiff what would happen if he filed an appeal.

14  Defendants Bautista and Robles removed the handcuffs, while Defendants Hamilton, Logue, and the

15  unidentified officers took out their batons.  As soon as the handcuffs were removed, Defendants

16  Hamilton, Bautista, Robles, Logue, and the unidentified officer began striking Plaintiff with their

17  batons. While this was occurring, Defendant Cedillo had his automatic weapon pointed at Plaintiff's

18  head.  Defendant Cedillo watched Plaintiff get beaten and pepper sprayed without intervening to

19  protect Plaintiff.  (Id.)

20    Plaintiff went to the ground and Defendants Hamilton, Bautista, and Robles then placed

21  handcuffs on Plaintiff.  While Plaintiff was on the ground and complying, Defendants Hamilton,

22  Bautista, Robles, Logue and the unidentified officer began ramming the tips of their batons into his

23  back and side.  Plaintiff yelled in pain and asked them to stop because they had broken his back, but

24  they continued to ram him with their batons.  (Id.)

25    Plaintiff informed Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer

26  that his back was broken, he was having difficulty breathing, and he was in extreme pain.  Defendant

27  Hamilton responded that Plaintiff was warned what would happen if he continued to file grievances.

28  None of the officers helped Plaintiff to get up off the floor.  (Id.)

About fifteen minutes from the time Plaintiff had exited his cell, Defendants Riddle, McDaniel, and Grandy arrived.  Plaintiff was on the ground moaning and groaning and having difficulty breathing.  Defendant Hamilton told Defendants Riddle, McDaniel, and Grandy that Plaintiff had been pepper sprayed to cover up that they had used their batons and he thought Plaintiff's ribs or back were fractured.  Plaintiff told Defendants Hamilton, Bautista, Robles, and Logue that he was in excruciating pain, was very ill and needed to see a doctor.  Plaintiff's request to see a doctor was denied.  Plaintiff requested that he be taken to the showers to be decontaminated, but was denied.  (Id. at 64.)

On several occasions after the attack, Defendant Cedillos told Plaintiff that he got what he deserved for filing lawsuits against his friends and why he allowed Defendants Hamilton, Bautista, Robles, and Logue to beat Plaintiff.  (Plaintiff's Dec. 2, ECF No. 91.)

## C.    Defendants' Statement of Undisputed Facts

1.    On September 17, 2004, Defendant Cedillos was the control booth officer and mechanically released Plaintiff from his cell so that he could go to the prison's law library.

2.    Plaintiff was then placed into mechanical restraints and escorted into the rotunda of the housing unit.[4]

3.    Defendants Bautista and Hamilton then began to escort Plaintiff to the law library.[5]

4.    When an inmate, such as Plaintiff, is being escorted it was the policy or custom for the inmate to be "physically hands-on escorted by two officers any time a prisoner exits his cell or is placed in handcuffs."

5.    One officer will have his hand on the inmate while the other officer is either behind or beside them.

6.    As they walked to the yard door, while in the rotunda, Plaintiff became disruptive, agitated,

---

[4]Plaintiff disputes this fact and others by arguing how he was released him from his cell and what occurred while he was being escorted or during the alleged incident.  However, the argument Plaintiff sets forth does not dispute the fact stated.  Therefore, the Court will only set forth Plaintiff's arguments where the fact is actually in dispute.

[5]Plaintiff disputes this arguing the alleged use of excessive force occurred before any attempt was made to escort him to the law library.

1    belligerent, and resistive toward Defendant Hamilton.[6]

2    7.    Plaintiff stated to the escorting officers, "why don't you suck my nuts."[7]

3    8.    Plaintiff further stated to one of the officers, "you shut the fuck up."

4    9.    Defendant Hamilton had hold of Plaintiff's left elbow with his right hand.[8]

5    10.   Plaintiff then attempted to pull away from Defendant Hamilton's grip.[9]

6    11.   Defendant Hamilton then ordered Plaintiff to stop resisting.

7    12.   Plaintiff was then ordered by Defendant Hamilton to return to his cell due to his disruptive

8          behavior.

9    13.   Plaintiff complied with this order.[10]

10   14.   Defendants Bautista and Hamilton then escorted Plaintiff back to his cell.

11   15.   Defendant Robles was working as a floor officer in the housing unit at this time.

12   16.   Due to Plaintiff's behavior, Defendant Robles followed Hamilton and Bautista as they

13         escorted Plaintiff back to his cell.

14   17.   As Plaintiff and the officers were standing in front of Plaintiff's cell, waiting for the cell to

15         open, Plaintiff slipped his right hand out of the handcuffs and suddenly turned to his left side

16         to confront Defendant Hamilton.[11]

17   18.   Defendant Hamilton responded by grabbing Plaintiff around the upper torso with both arms

18         and forcing Plaintiff to the ground face-down.

19   19.   Defendant Cedillos then activated his personal alarm, opened the yard door, and waited for

20

21         [6]Plaintiff admits to using an expletive after Defendant Hamilton used an expletive toward him, but argues he
     became subdued and went inert on the ground.
22

23         [7]Plaintiff argues that Defendant Riddle was not present and Defendants cannot prove that he made this
     statement, and therefore, the court should conclude that Plaintiff never made this statement.

24         [8]Plaintiff disputes this fact.

25         [9]Plaintiff disputes this fact arguing that he did not attempt to pull away from Defendant Hamilton.

26         [10]Plaintiff disputes this arguing he was unable to comply on his own because he was dragged to the cell by
     Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer.
27

28         [11]Plaintiff disputes this arguing that Defendant Hamilton ordered Bautista, Robles, and the unidentified
     officer to remove his handcuffs and he was then body slammed to the ground.

1    responding staff.[12]

2    20.   Defendant Riddle then responded to the personal alarm and came to the housing unit.

3    21.   Once on the ground, Plaintiff was swinging his arms and kicking his feet.[13]

4    22.   Plaintiff then grabbed Defendant Robles' right leg and ankle with both hands.[14]

5    23.   Defendant Robles issued numerous orders to Plaintiff to place his hands behind his back and

6          consent to being placed into handcuffs.

7    24.   When these efforts were unsuccessful in gaining Plaintiff's compliance with orders,

8          Defendant Robles administered one three-second burst of pepper spray into Plaintiff's facial

9          area.[15]

10   25.   Plaintiff then let go of Defendant Robles' ankle and complied with instructions to stop

11         struggling.

12   26.   Defendant Robles then grabbed Plaintiff's right wrist with both hands.

13   27.   Defendant Bautista obtained control of Plaintiff's left hand, which still had the handcuff on

14         it.[16]

15   28.   Defendant Hamilton maintained control of Plaintiff's upper body.

16   29.   Defendant Bautista then re-applied the handcuff to Plaintiff's right wrist.[17]

17

18

19   _____

20      [12]Plaintiff disputes this fact arguing that Defendant Cedillo did not press his alarm until after he watched

21   Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer remove his handcuffs and assault him.

22      [13]Plaintiff disputes this fact arguing he complied with orders to roll onto his stomach in a prone position so
     he could be handcuffed.

23      [14]Plaintiff disputes this fact arguing he complied with orders to roll onto his stomach in a prone position so
24   he could be handcuffed.

25      [15]Plaintiff disputes this fact arguing that he was subdued and the pepper spray was used without
     provocation.

26      [16]Plaintiff disputes this fact arguing that the handcuffs had been removed by Defendants and no cuff was
27   dangling from his wrist.

28      [17]Plaintiff disputes this fact arguing that his handcuffs had been removed and the handcuffs were placed on
     both of his wrists.

1

30.     Defendant Hamilton then took control of Plaintiff's left biceps with his right hand.[18]

2

31.     Defendant Robles placed his left hand on Plaintiff's right biceps and he placed his right hand

3

on Plaintiff's right shoulder.[19]

4

32.     Defendants Hamilton and Robles then assisted Plaintiff to his feet.

5

33.     Defendant McDaniel then arrived in the unit and medically examined Plaintiff.[20]

6

34.     Plaintiff was standing against the wall when Defendant McDaniel arrived in the unit.

7

35.     Defendant McDaniel noted that Plaintiff was alert and oriented, but that he had been exposed

8

to pepper spray and that his eyes were red and watery.[21]

9

36.     Other than this, Defendant McDaniel noted no visible injuries or any other condition

10

requiring medical treatment.[22]

11

37.     Due to the exposure to pepper spray, Plaintiff was then offered the opportunity to

12

decontaminate in the shower.[23]

13

38.     Plaintiff declined this offer, responding, "No, I don't want decontamination, I just want to

14

return to my cell and take my nitro."[24]

15

39.     Plaintiff then denied having any chest pain, stating, "No, I'm not having any pain.  I just want

16

17

18

19

[18]Plaintiff disputes this fact arguing that once he was placed in handcuffs and leg restraints, Defendants

20

Hamilton, Bautista, Robles, Logue, and the unidentified officer began hitting him with their batons.

21

[19]Plaintiff disputes this fact arguing that Defendants kneeled on Plaintiff's back and neck until Defendants
Grandy, McDaniel, and Riddle arrived on the scene.

22

[20]Plaintiff disputes that he was medically examined.

23

[21]Plaintiff disputes this fact arguing that he was in pain and having difficulty breathing, but Defendants

24

McDaniel, Grandy, and Riddle ignored his pleas for medical treatment.

25

[22]Plaintiff disputes this fact arguing that Defendant McDaniel refused to medically examine Plaintiff, but
self diagnosed Plaintiff and denied him medical treatment.

26

[23]Plaintiff disputes this fact arguing that he was never offered an opportunity to decontaminate in the

27

shower, but that Defendants Grandy, Riddle, and McDaniel refused his request to allow him to decontaminate in the
shower.

28

[24]Plaintiff disputes this fact arguing he did not decline to decontaminate in the shower.

1    to return to my cell."[25]

2    40.   Defendant McDaniel noted that Plaintiff was speaking clearly, had no visible signs of

3          respiratory distress, and no visible injuries.[26]

4    41.   Defendants Robles and Hamilton then escorted Plaintiff back to his cell.[27]

5    42.   Defendant McDaniel observed Plaintiff being escorted back to his cell and noted that he was

6          walking without difficulty.[28]

7    43.   Defendant Riddle then gave Plaintiff instructions on how to decontaminate himself inside

8          his cell and stayed there until Plaintiff had done so.[29]

9    44.   Defendant McDaniel then called to the emergency room and reported to the registered nurse

10         on duty that Plaintiff had been exposed to pepper spray.

11   45.   Following the incident, a medical evaluation of Defendant Hamilton found that he had

12         swelling to his right hand.

13   46.   This injury was suffered when he struck this right hand on the floor.[30]

14   47.   Similarly, Defendant Bautista suffered abrasions to both elbows.

15   48.   This injury was suffered when he scraped his elbows on the concrete while trying to gain

16         control of Plaintiff.[31]

17   49.   Defendant Logue was not a participant or witness to this incident involving Plaintiff on

18   _____

19         [25] Plaintiff disputes this fact arguing that when he informed Defendants McDaniel, Grandy, and Riddle that
20   he was having chest pain and thought he was having a heart attack they ignored his complaints.

21         [26] Plaintiff disputes this fact arguing that he could hardly breathe and had obvious signs that his spine and
     ribs were fractured.

22         [27] Plaintiff disputes this fact arguing that he was dragged by the collar of his jumpsuit to his cell.

23         [28] Plaintiff disputes this fact arguing that he was dragged to his cell because he was very ill, delirious with
24   pain, and unable to walk or stand.

25         [29] Plaintiff disputes this arguing that no defendant stayed after he was placed in his cell and he was not given
     decontamination instructions.

26         [30] Plaintiff disputes this arguing that Defendant Hamilton's hand was injured when he hit Plaintiff in the head
27   and face and slammed him into the wall.

28         [31] Plaintiff disputes this fact arguing that any injuries to Defendant Bautista were through no fault of
     Plaintiff.

10

1  September 17, 2004.

2  50.  Plaintiff admits that Defendant Logue "didn't do anything to me" and that "she didn't kick

3       me, punch me."[32]

4  51.  Defendant Cedillos was a witness to the incident on September 17, 2004, but did not himself

5       use any force towards Plaintiff.

6  52.  Similarly, Defendant Riddle responded to the incident on September 17, 2004, but did not

7       himself use any force toward Plaintiff.

8  53.  Plaintiff filed numerous inmate appeals regarding the incident on September 17, 2004.

9  54.  Plaintiff states that he has filed fourteen inmate appeals regarding this incident alone.

10 55.  Plaintiff states that he continues to speak out when he believes his or another inmate's rights

11      have been violated.

12 56.  Based on the incident of September 17, 2004, Plaintiff was charged with and found guilty

13      of the charge of wilfully resisting a peace officer.

14 57.  Plaintiff was assessed ten days confined to quarters status, credit for time served, counseled

15      and reprimanded.

16 **D.   Defendants' Position**

17      Defendants argue that there is no evidence that Defendants Hamilton, Robles, Logue, and

18 Bautista subjected Plaintiff to excessive force in violation of the Eighth Amendment.  There is no

19 evidence that Defendants Riddle and McDaniel were deliberately indifferent to Plaintiff's medical

20 needs in violation of the Eighth Amendment.  There is no evidence to support Plaintiff's claims that

21 Defendants Hamilton, Bautista, Logue, Robles, Cedillos, and McDaniel retaliated against Plaintiff

22 in violation of the First Amendment.  Additionally, Plaintiffs's excessive force and retaliation claims

23 against Defendants Hamilton, Bautista, Logue, Robles, and Cedillos are barred as a judgment for

24 Plaintiff would necessarily imply the invalidity of his prison disciplinary hearing conviction.  Finally,

25 Defendants argue the are entitled to qualified immunity.

26

27

28  [32]Plaintiff disputes this fact arguing that Defendant Logue participated in the attack by using her baton on Plaintiff.

11

### E.   Plaintiff's Position

Defendants Hamilton, Bautista, Robles, and Rogue used their batons to brutally and viciously beat Plaintiff causing three ribs and his back to be fractured. Defendants Hamilton, Bautista, Robles, Cedillos, and Logue acted with deliberate indifference when they failed to intervene to protect Plaintiff from the use of excessive force. Defendants Hamilton, Bautista, Robles, Logue, Riddle, Cedillos, Grandy, and McDaniel acted with deliberate indifference when they denied, delayed, and interfered with Plaintiff receiving medical treatment for his back and rib injuries, and failed to decontaminate him following the application of pepper spray. Defendants Hamilton, Bautista, Robles, Logue, Riddle, Cedillos, Grandy, and McDaniel violated Plaintiff's First Amendment right to seek redress of grievances without retaliation and due process of law.[33]

### F.   Discussion

#### 1.   Excessive Force

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S. Ct. 995, 999-1000 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8, 112 S. Ct. at 1000 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7, 112 S. Ct. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000) (quotation

---

[33]Plaintiff is attempting to expand his claims against the named defendants to include failure to protect and due process claims and to expand his deliberate indifference to medical needs to additional named defendants. However, Plaintiff may not now expand the scope of this litigation via his opposition to Defendants' motion for summary judgment. See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Plaintiff's claims are confined to those screened and found cognizable by the Court. (ECF Nos. 20, 27.)

1   marks omitted).  Necessarily excluded from constitutional recognition is the de minimis use of

2   physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

3   Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9-10, 112 S. Ct. at 1000)

4   (quotations marks omitted).  In determining whether the use of force was wanton and unnecessary,

5   courts may evaluate the extent of the prisoner's injury, the need for application of force, the

6   relationship between that need and the amount of force used, the threat reasonably perceived by the

7   responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson,

8   503 U.S. at 7, 112 S. Ct. at 999 (quotation marks and citations omitted).

9       Defendants Hamilton, Robles, Logue, and Bautista argue that the evidence shows that

10   Plaintiff had become dangerously argumentative and belligerent prior to the application of force and

11   that Plaintiff's injuries are inconsistent with the amount of force he claims was used on him.

12   Plaintiff argues that he was complying and did not become belligerent or argumentative and that

13   during the attack his back and ribs were fractured.

14       Additionally, Defendant Logue, argues that in his deposition Plaintiff stated that Defendant

15   Logue did not touch him, but was responsible for the excessive force because he failed to intervene

16   to protect Plaintiff from the use of force.  Plaintiff states that during the incident in the rotunda

17   Defendant Logue did not touch him, but when they arrived at the cell, Defendant Logue pulled out

18   his baton and participated in beating Plaintiff.

19       Defendant Logue requests that the court take notice of Plaintiff's contradictory statements

20   in his complaint, opposition, and deposition and determine that Plaintiff is not being truthful.  A

21   party cannot create an issue of fact by a declaration contradicting his or her own deposition or other

22   sworn testimony.  Unless the damaging testimony is shown to have resulted from mistake or

23   confusion, the contradictory declaration creates no genuine issue of fact on a summary judgment

24   motion.  See Cleveland v. Policy Management Systems Corp. 526 US 795, 806, 119 S. Ct. 1597,

25   1603–1604 (1999) (recognizing, without endorsing, "sham affidavit" holdings in every circuit); Van

26   Asdale v. International Game Tech., 577 F3d 989, 998 (9th Cir. 2009).

27       Here, Plaintiff submitted the same sworn testimony in his complaint and declaration in

28   opposition to the motion for summary judgment stating that Defendant Logue participated in the

excessive force by beating Plaintiff with his baton.  Plaintiff's deposition testimony, which took place between the two sworn statements states that Defendant Logue did not participate in the beating, but was responsible because he failed to intervene.  It is unclear if the deposition statement is addressing only the incident that occurred on the rotunda or Defendant Logue's overall participation in the events alleged.  Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury functions, not the judge.  Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

There exists a factual dispute regarding whether the use of force was applied in a good faith effort to restore discipline or maliciously and sadistically for the purpose of causing harm.  Wilkins, ___ U.S. at ___, 130 S. Ct. at 1178.  Defendants Hamilton, Robles, Logue, and Bautista motion for summary judgment on Plaintiff's excessive force claim should be denied.

## 2.      Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 U.S. 285, 291 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.  "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010);

1  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful

2  act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused

3  harm, Jett, 439 F.3d at 1096.

4          In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

5  civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

6  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton

7  v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06, 97 S.

8  Ct. at 292.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical

9  condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

10 Medical malpractice does not become a constitutional violation merely because the victim is a

11 prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th

12 Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds,

13 WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence

14 is insufficient to establish deliberate indifference to serious medical needs.  See Wood v.

15 Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere disagreement

16 with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891

17 F.2d 240, 242 (9th Cir. 1989).

18         Defendants Riddle and McDaniel argue that they are entitled to summary judgment because

19 Plaintiff informed them that he was not in any pain and had no visible signs of injury.  Defendants

20 state that Plaintiff declined their offers to decontaminate him and told them that he just wanted to

21 return to his cell.  Plaintiff states that he was not alert and oriented, but was moaning, groaning, and

22 having difficulty breathing.  Plaintiff claims that when Defendants Riddle and McDaniel arrived he

23 immediately told them that his ribs and back were fractured, and he was in excruciating pain.

24 Plaintiff alleges he requested to be placed in the shower to be decontaminated, but Defendants

25 refused his request and failed to provide medical treatment.

26         There exists a factual dispute regarding whether Plaintiff was suffering from a serious

27 medical need of which Defendants Riddle and McDaniel were aware and failed to adequately

28 respond.  Simmons, 609 F.3d at 1018.  Defendants Riddle and McDaniel's motion for summary

judgment on Plaintiff's deliberate indifference to serious medical needs claim should be denied.

### 3.    **Retaliation**

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Retaliation against a prisoner for the exercise of his right to file a grievance is itself a constitutional violation, prohibited as a matter of clearly established law. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995.) Within the prison context "[a] viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482, 115 S. Ct. 2293 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Defendants argue that Plaintiff's First Amendment rights were not chilled because he has continued to file grievances, and therefore, they are entitled to summary judgment. However, the correct inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from further First Amendment activities." Rhodes, 408 F.3d at 569 (citations omitted). Plaintiff's allegations that he was beaten and then denied medical treatment for filing grievances are sufficient to show conduct that would chill a person of ordinary firmness from further First Amendment activities.

### a.    **Cedillos**

Defendant Cedillos argues that the only evidence against him is that he sounded his alarm after Plaintiff slipped free from his handcuffs. This is not adverse action and Defendant Cedillos is entitled to summary judgment.

Plaintiff claims that Defendant Cedillos observed Plaintiff being attacked by the defendants,

but did nothing to intervene, and waited to activate his alarm until after Plaintiff was subdued on the ground and had been placed in handcuffs and leg restraints.  After the attack was over, Defendant Cedillos told Plaintiff that he got what he deserved for filing lawsuits and grievances against his fellow officers and that is why he allowed Plaintiff to be beaten.

There is a factual dispute as to whether Defendant Cedillos allowed Plaintiff to be attacked by correctional officers in retaliation for Plaintiff filing inmate grievances.

**b.    Defendants Hamilton, Bautista, Robles and Logue**

Defendant Logue argues that there is no evidence that she took any action toward Plaintiff on September 17, 2004.  Defendants Hamilton, Bautista, and Robles state that the action they took was necessary to restore discipline because Plaintiff slipped out of his handcuffs, became belligerent, and refused to stop resisting once he was taken to the ground.  Defendants claim that Plaintiff's claims that Defendants Hamilton, Bautista, and Robles retaliated against him are merely speculative.

Plaintiff contends that Defendant Hamilton told Plaintiff they were going to beat him up, and instructed Defendants Bautista and Robles to remove the handcuffs from Plaintiff.  When Plaintiff informed Defendants Hamilton, Bautista, Robles, and Logue not to remove the handcuffs, Defendant Hamilton responded that Plaintiff had been warned what would happen if he continued to file appeals.  After the handcuffs were removed, Defendants Hamilton, Bautista, Robles, and Logue assaulted Plaintiff.

While Defendants argue that the use of force was necessary to restore discipline, Plaintiff alleges that the force was unnecessary and only used to punish him for filing grievances.  There is a factual dispute as to whether the force used against Plaintiff was a good faith effort to restore discipline or was maliciously applied due to Plaintiff exercising his right to file grievances.

**c.    Defendant Riddle**

Defendant Riddle argues that he was nothing more than a responder to the incident and did not use any force against Plaintiff.  Defendant Riddle offered to decontaminate Plaintiff, instructed Plaintiff how to decontaminate, and observed Plaintiff until he had decontaminated.

Plaintiff claims that on January 28, 2004, he filed an inmate appeal against Defendant Riddle for participating in an incident in which excessive force was used against Plaintiff.  Plaintiff alleges

1   that due to Plaintiff's filing grievances against the defendants, Defendant Riddle failed to

2   decontaminate Plaintiff after he was pepper sprayed, and Plaintiff was not given decontamination

3   instructions. Plaintiff also claims that, although he told Defendant Riddle that his back and ribs were

4   fractured and he was in excruciating pain, he was denied emergency medical treatment after the

5   assault.

6       There is a factual dispute as to whether Defendant Riddle failed to decontaminate Plaintiff

7   and provide medical treatment due to Plaintiff having filed inmate grievances.

8                           **d.**      **Defendant Mcdaniel**

9       Defendant McDaniel argues that she did not take any adverse action against Plaintiff. She

10  responded to the scene to medically evaluate Plaintiff and determine if he required medical care.

11  From what she observed there were no obvious injuries, and Plaintiff stated that he wanted to be

12  returned to his cell.

13      Plaintiff claims that on January 28, 2004, he filed an inmate appeal against Defendant

14  McDaniel for participating in a prior incident in which excessive force was used against Plaintiff.

15  When Defendant McDaniel responded to the incident at issue here, Plaintiff informed her that his

16  back and ribs were fractured, he was having difficulty breathing, and was in excruciating pain.

17  Plaintiff alleges that because he had previously filed the inmate appeal against Defendant McDaniel,

18  Defendant McDaniel refused to provide emergency medical treatment.

19      A factual dispute exists as to whether Defendant McDaniel failed to provide medical

20  treatment due to Plaintiff's history of filing inmate grievances.

21                          **e.**      **Conclusion**

22      As previously set forth, the Court is mindful that it must "'afford appropriate deference and

23  flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

24  conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482). In this

25  instance, however, there exists a factual dispute between the parties over whether the proffered

26  reason for the use of force occurred or if the force was used to retaliate against Plaintiff. Because

27  the evidence set forth by Plaintiff is sufficient to create a triable issue of fact with respect to whether

28  or not Plaintiff was retaliated against for filing complaints against staff, the Court shall recommend

1  that Defendants Hamilton, Bautista, Logue, Robles, Riddle, Cedillos, and McDaniel's motion for

2  summary judgment on Plaintiff's retaliation claims be denied.

3              **4.     Favorable Termination Rule**

4         Defendants argue that they are entitled to summary judgment because a judgment in

5  Plaintiff's favor would necessarily imply the invalidity of Plaintiff's disciplinary hearing conviction.

6  It has long been established that state prisoners cannot challenge the fact or duration of their

7  confinement in a § 1983 action and their sole remedy lies in habeas corpus relief.  Wilkinson v.

8  Dotson, 544 U.S. 74, 78, 125 S. Ct. 1242 (2005).  Often referred to as the favorable termination rule,

9  this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate

10 the duration of their confinement - either directly through an injunction compelling speedier release

11 or *indirectly through a judicial determination that necessarily implies the unlawfulness of the State's*

12 *custody*."  Wilkinson, 544 U.S. at 81 (emphasis added).  Thus, "a state prisoner's § 1983 action is

13 barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no

14 matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

15 proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement

16 or its duration."  Id. at 81-82.

17        Defendants argue that Plaintiff's excessive force and retaliation claims are barred because

18 finding in Plaintiff's favor would necessarily demonstrate the invalidity of Plaintiff's confinement.

19 In this instance, Plaintiff was sentenced to ten days confined to quarters status, with credit for time

20 served after being found guilty in a rule violation hearing of willfully resisting a correctional officer.

21 Plaintiff was "[a]ssessed ZERO days Forfeiture of Credit due to Lost Time Constraints."  (ECF No.

22 55-3 at 35.)  Since the sentence imposed upon Plaintiff, after he was found guilty of the rule

23 violation, did not effect the duration of his confinement, Plaintiff's claims are not barred by the

24 favorable termination rule.

25              **6.     Qualified Immunity**

26        Finally, Defendants argue that they are entitled to qualified immunity because no official

27 would reasonably believe that they would violate an inmate's clearly established right by responding

28 in the manner that the defendants responded.

1    The doctrine of qualified immunity protects government officials from civil liability where

2 "their conduct does not violate clearly established statutory or constitutional rights of which a

3 reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815

4 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). In resolving a

5 claim of qualified immunity, courts must determine whether, taken in the light most favorable to the

6 plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was

7 clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), overruled in

8 part by Pearson, 129 S. Ct. at 813; Mueller v. Auker, 576 F.3d 979, 991, 993 (9th Cir. 2009). A

9 district court is "permitted to exercise their sound discretion in deciding which of the two prongs of

10 the qualified immunity analysis should be addressed first in light of the circumstances in the

11 particular case at hand." Pearson, 129 S. Ct. at 818. The inquiry as to whether the right was clearly

12 established is "solely a question of law for the judge." Dunn v. Castro, No. 08-15957, 2010 WL

13 3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d

14 1075, 1085 (9th Cir. 2009)).

15    In this instance, taking the facts in the light most favorable to Plaintiff, Defendants are not

16 entitled to qualified immunity. While Defendants argue that their actions in responding to Plaintiff

17 were reasonable, Plaintiff alleges that he was complying with Defendants and they assaulted him and

18 denied him medical care because he had filed grievances against prison officials. Where there are

19 factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary

20 judgment on qualified immunity grounds. See Liston v. County of Riverside, 120 F.3d 965, 967 (9th

21 Cir. 1997); Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1997); Alexander v. City of San

22 Francisco, 29 F.3d 1355, 1364 (9th Cir. 1994).

23    Additionally, it is clearly established the prison officials cannot retaliate against inmates for

24 filing inmate grievances, Pratt, 65 F.3d at 806, use force maliciously and sadistically to cause harm,

25 Wilkins, 130 S.Ct. at 1178, or knowingly deny medical treatment for a prisoner's pain or serious

26 medical need, Jett, 439 F.3d at 1096. Defendants motion for summary judgment on the grounds of

27 qualified immunity should be denied.

28 ///

1

**IV.      Conclusion and Recommendation**

2         For the reasons set forth herein, the Court HEREBY RECOMMENDS that Defendants'

3  motion for summary judgment be DENIED.

4         These findings and recommendations will be submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

6  days after being served with these findings and recommendations, the parties may file written

7  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

8  Findings and Recommendations."  The parties are advised that failure to file objections within the

9  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

10  1153 (9th Cir. 1991).

11         IT IS SO ORDERED.

12  **Dated:    May 22, 2012**            **/s/ Barbara A. McAuliffe**
                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21