# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DONALD GLASS,                                   CASE NO. 1:09-cv-00098-AWI-BAM PC

                Plaintiff,          FINDINGS AND RECOMMENDATIONS
                                                RECOMMENDING DENYING DEFENDANTS'
   v.                                          MOTION FOR SUMMARY JUDGMENT

R. FIELDS, et al.,                              (ECF Nos. 55, 86, 87, 88, 91, 92)

              Defendants.         OBJECTIONS DUE WITHIN THIRTY DAYS

_____/

## I.    Procedural History

Plaintiff Donald Glass ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the complaint, filed January 5, 2009, against Defendants Hamilton, Robles, Logue, and Bautista for excessive force in violation of the Eighth Amendment; Defendants Grandy, Riddle, and McDaniel for deliberate indifference to serious medical needs in violation of the Eighth Amendment; and Defendants Hamilton, Bautista, Logue, Robles, Riddle, Cedillos, Grandy, and McDaniel for retaliation in violation of the First Amendment.[1]  Defendants Bautista, Cedillos, Hamilton, Logue, McDaniel, Riddle, and Robles filed a motion for summary judgment on July 25, 2011.  (ECF No. 55.)  After receiving several extensions of time and filing a motion for reconsideration, Plaintiff filed

---

[1] On August 31, 2011, an order issued dismissing the Doe defendant from this action for Plaintiff's failure to effect service of process in compliance with Federal Rule of Civil Procedure 4(m).  (ECF No. 58.)  Defendant Grandy has not been served.

1

his opposition on February 23, 2012.[2]  (ECF Nos. 86, 87, 88.)  On March 2, 2012, Plaintiff filed a declaration re the motion for summary judgment.  (ECF No. 91.)  After receiving an extension of time, Defendants filed a reply on March 2, 2012.  (ECF No. 92.)

## II.   Plaintiff's Cross Motion for Summary Judgment

Plaintiff titles his opposition as a cross motion for summary judgment.  Pursuant to the scheduling order, dispositive motions were to be filed on or before July 25, 2011.  (ECF No. 34.)  Plaintiff's motion is untimely, and therefore, the pleading shall only be considered as an opposition to Defendants' motion for summary judgment.

## III.   Summary Judgment

### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the second informational order filed June 4, 2010.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 25.)

required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

**B.     Plaintiff's Evidentiary Objections**

In Plaintiff's answer to Defendants' statement of undisputed fact, Plaintiff objects that Defendants did not attach verified declarations to their motion for summary judgment, and Defendants denied his request for a copy of Plaintiff's deposition transcript, and therefore, should be precluded from using any portion of the transcript in their motion for summary judgment.  In his opposition, Plaintiff objects to Defendants exhibits because they were not provided in response to his discovery requests.

Federal Rule of Civil Procedure 56(1)(A) states that a fact can be asserted by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations," etc.  While affidavits or declarations made on personal knowledge can be used to support a motion for summary judgment, they are not required. Fed. R. Civ. P. 56(c)(4).  Defendants have submitted copies of reports written by Defendants in this action and such evidence is properly considered in deciding a motion for summary judgment.

Plaintiff complains that Defendants denied his request for a copy of his deposition transcript. The Federal Rules do not require the government to provide a litigant proceeding in forma pauperis with a copy of his deposition transcript.  Hallford v. California Dep't of Corrections, No. 2:05-cv-00573-FCD-DAD-P, 2010 WL 921166, *1 (E.D.Cal. March 12, 2010); Allen v. Hernandez, No. 1:05-cv-00145-AWI-SMS-PC; 2008 WL 4078772, *1 (E.D.Cal. Aug. 29, 2008).  Federal Rule of Civil Procedure 30 provides that the deposition transcript is available to a party upon payment of reasonable charges to the deposition officer.  Plaintiff was able to obtain a copy of his deposition

1   transcript by contacting the deposition officer and paying the required fee.

2   Discovery in this action opened on August 10, 2010. (ECF No. 29.) An amended scheduling

3   order issued on September 12, 2010, establishing the discovery cut-off date at May 13, 2011. (ECF

4   No. 34.) Plaintiff filed motions to amend the scheduling order on March 18, 2011, and May 19,

5   2011, which were denied on September 2, 2011. (ECF Nos. 39, 50, 59.) Defendants served

6   responses to Plaintiff's discovery requests on April 14, 2011, approximately one month prior to the

7   discovery cut-off date. Plaintiff states that the court should compel Defendants to respond to the

8   interrogatories he served. Plaintiff had the opportunity to file a motion to compel and failed to do

9   so. The Court denies Plaintiff's untimely request for an order compelling discovery.

10   Based on the foregoing, Plaintiff's evidentiary objections are overruled.

11   **C.   Plaintiff's Facts**

12   On September 12, 2004, Plaintiff filed an appeal alleging that Defendants Hamilton and

13   Robles had been ordered to beat him up and he was in fear for his life and safety.[3] (Plaintiff's Opp.

14   62, ECF No. 87.) On September 17, 2004, Defendants Hamilton, Robles, Cedillos, Bautista, and

15   Logue attacked Plaintiff on four occasions, twice in the rotunda area, and twice in C section resulting

16   in Plaintiff's ribs and back being fractured. (Id.)

17   Defendant Cedillos released Plaintiff from his cell to go to his weekly law library session.

18   After exiting his cell, Plaintiff stopped to have another prisoner sign some documents. Defendant

19   Hamilton yelled at Plaintiff not to pick up another prisoner's documents. Plaintiff and Defendant

20   Hamilton got into a verbal confrontation regarding Plaintiff and the documents. Plaintiff states that

21   he did not attempt to pull away from Defendant Hamilton and did not become disruptive, agitated,

22   belligerent or resistive toward any defendant. Without provocation, Defendant Hamilton placed

23   Plaintiff in a choke hold, slammed him to the ground, and began punching Plaintiff while they were

24   in the rotunda area. (Id. at 61.)

25

26

27   [3]Arguments or contentions set forth in a responding brief do not constitute evidence. See Coverdell v.
Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence). Due to
their lack of verification, Plaintiff's opposition brief and answer to Defendants' statement of undisputed facts are not

28   treated as opposing affidavits. Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006).

4

While Plaintiff was on the ground Defendants Bautista, Robles, and an unidentified officer began punching, stomping and kicking Plaintiff, Defendant Logue stood by and did nothing. Defendant Hamilton picked Plaintiff up off the ground and slammed Plaintiff against the wall. Defendants Bautista, Robles, and Hamilton grabbed Plaintiff by the seat of his jumpsuit while Defendant Logue and the unidentified officer followed behind.  (Id.)

As they approached Plaintiff's cell, Defendant Hamilton prevented Plaintiff from entering and pushed him against the wall.  Defendant Hamilton then told Defendants Bautista and Robles to remove Plaintiff's handcuffs because they were going to beat Plaintiff's ass.  Plaintiff did not slip his handcuffs.  Plaintiff asked Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer not to remove his handcuffs, and informed them that it would be a violation of the Eighth Amendment for them for them to beat a defenseless prisoner who they had a duty to protect.  (Id. at 62.)

Defendant Hamilton stated that he had told Plaintiff what would happen if he filed an appeal. Defendants Bautista and Robles removed the handcuffs, while Defendants Hamilton, Logue, and the unidentified officers took out their batons.  As soon as the handcuffs were removed, Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer began striking Plaintiff with their batons. While this was occurring, Defendant Cedillo had his automatic weapon pointed at Plaintiff's head.  Defendant Cedillo watched Plaintiff get beaten and pepper sprayed without intervening to protect Plaintiff.  (Id.)

Plaintiff went to the ground and Defendants Hamilton, Bautista, and Robles then placed handcuffs on Plaintiff.  While Plaintiff was on the ground and complying, Defendants Hamilton, Bautista, Robles, Logue and the unidentified officer began ramming the tips of their batons into his back and side.  Plaintiff yelled in pain and asked them to stop because they had broken his back, but they continued to ram him with their batons.  (Id.)

Plaintiff informed Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer that his back was broken, he was having difficulty breathing, and he was in extreme pain.  Defendant Hamilton responded that Plaintiff was warned what would happen if he continued to file grievances. None of the officers helped Plaintiff to get up off the floor.  (Id.)

About fifteen minutes from the time Plaintiff had exited his cell, Defendants Riddle, McDaniel, and Grandy arrived. Plaintiff was on the ground moaning and groaning and having difficulty breathing. Defendant Hamilton told Defendants Riddle, McDaniel, and Grandy that Plaintiff had been pepper sprayed to cover up that they had used their batons and he thought Plaintiff's ribs or back were fractured. Plaintiff told Defendants Hamilton, Bautista, Robles, and Logue that he was in excruciating pain, was very ill and needed to see a doctor. Plaintiff's request to see a doctor was denied. Plaintiff requested that he be taken to the showers to be decontaminated, but was denied. (Id. at 64.)

On several occasions after the attack, Defendant Cedillos told Plaintiff that he got what he deserved for filing lawsuits against his friends and why he allowed Defendants Hamilton, Bautista, Robles, and Logue to beat Plaintiff. (Plaintiff's Dec. 2, ECF No. 91.)

### C.   Defendants' Statement of Undisputed Facts

1.   On September 17, 2004, Defendant Cedillos was the control booth officer and mechanically released Plaintiff from his cell so that he could go to the prison's law library.

2.   Plaintiff was then placed into mechanical restraints and escorted into the rotunda of the housing unit.[4]

3.   Defendants Bautista and Hamilton then began to escort Plaintiff to the law library.[5]

4.   When an inmate, such as Plaintiff, is being escorted it was the policy or custom for the inmate to be "physically hands-on escorted by two officers any time a prisoner exits his cell or is placed in handcuffs."

5.   One officer will have his hand on the inmate while the other officer is either behind or beside them.

6.   As they walked to the yard door, while in the rotunda, Plaintiff became disruptive, agitated,

---

[4]Plaintiff disputes this fact and others by arguing how he was released him from his cell and what occurred while he was being escorted or during the alleged incident. However, the argument Plaintiff sets forth does not dispute the fact stated. Therefore, the Court will only set forth Plaintiff's arguments where the fact is actually in dispute.

[5]Plaintiff disputes this arguing the alleged use of excessive force occurred before any attempt was made to escort him to the law library.

1   belligerent, and resistive toward Defendant Hamilton.[6]

2   7.   Plaintiff stated to the escorting officers, "why don't you suck my nuts."[7]

3   8.   Plaintiff further stated to one of the officers, "you shut the fuck up."

4   9.   Defendant Hamilton had hold of Plaintiff's left elbow with his right hand.[8]

5   10.   Plaintiff then attempted to pull away from Defendant Hamilton's grip.[9]

6   11.   Defendant Hamilton then ordered Plaintiff to stop resisting.

7   12.   Plaintiff was then ordered by Defendant Hamilton to return to his cell due to his disruptive

8   behavior.

9   13.   Plaintiff complied with this order.[10]

10   14.   Defendants Bautista and Hamilton then escorted Plaintiff back to his cell.

11   15.   Defendant Robles was working as a floor officer in the housing unit at this time.

12   16.   Due to Plaintiff's behavior, Defendant Robles followed Hamilton and Bautista as they

13   escorted Plaintiff back to his cell.

14   17.   As Plaintiff and the officers were standing in front of Plaintiff's cell, waiting for the cell to

15   open, Plaintiff slipped his right hand out of the handcuffs and suddenly turned to his left side

16   to confront Defendant Hamilton.[11]

17   18.   Defendant Hamilton responded by grabbing Plaintiff around the upper torso with both arms

18   and forcing Plaintiff to the ground face-down.

19   19.   Defendant Cedillos then activated his personal alarm, opened the yard door, and waited for

20

21   [6]Plaintiff admits to using an expletive after Defendant Hamilton used an expletive toward him, but argues he
became subdued and went inert on the ground.

22

23   [7]Plaintiff argues that Defendant Riddle was not present and Defendants cannot prove that he made this
statement, and therefore, the court should conclude that Plaintiff never made this statement.

24   [8]Plaintiff disputes this fact.

25   [9]Plaintiff disputes this fact arguing that he did not attempt to pull away from Defendant Hamilton.

26   [10]Plaintiff disputes this arguing he was unable to comply on his own because he was dragged to the cell by
Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer.

27

28   [11]Plaintiff disputes this arguing that Defendant Hamilton ordered Bautista, Robles, and the unidentified
officer to remove his handcuffs and he was then body slammed to the ground.

1    responding staff.[12]

2   20.   Defendant Riddle then responded to the personal alarm and came to the housing unit.

3   21.   Once on the ground, Plaintiff was swinging his arms and kicking his feet.[13]

4   22.   Plaintiff then grabbed Defendant Robles' right leg and ankle with both hands.[14]

5   23.   Defendant Robles issued numerous orders to Plaintiff to place his hands behind his back and
6        consent to being placed into handcuffs.

7   24.   When these efforts were unsuccessful in gaining Plaintiff's compliance with orders,
8        Defendant Robles administered one three-second burst of pepper spray into Plaintiff's facial
9        area.[15]

10   25.   Plaintiff then let go of Defendant Robles' ankle and complied with instructions to stop
11        struggling.

12   26.   Defendant Robles then grabbed Plaintiff's right wrist with both hands.

13   27.   Defendant Bautista obtained control of Plaintiff's left hand, which still had the handcuff on
14        it.[16]

15   28.   Defendant Hamilton maintained control of Plaintiff's upper body.

16   29.   Defendant Bautista then re-applied the handcuff to Plaintiff's right wrist.[17]

17

18

19 _____

20     [12]Plaintiff disputes this fact arguing that Defendant Cedillo did not press his alarm until after he watched
21 Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer remove his handcuffs and assault him.

22     [13]Plaintiff disputes this fact arguing he complied with orders to roll onto his stomach in a prone position so
 he could be handcuffed.

23     [14]Plaintiff disputes this fact arguing he complied with orders to roll onto his stomach in a prone position so
24 he could be handcuffed.

25     [15]Plaintiff disputes this fact arguing that he was subdued and the pepper spray was used without
 provocation.

26     [16]Plaintiff disputes this fact arguing that the handcuffs had been removed by Defendants and no cuff was
27 dangling from his wrist.

28     [17]Plaintiff disputes this fact arguing that his handcuffs had been removed and the handcuffs were placed on
 both of his wrists.

30.   Defendant Hamilton then took control of Plaintiff's left biceps with his right hand.[18]

31.   Defendant Robles placed his left hand on Plaintiff's right biceps and he placed his right hand on Plaintiff's right shoulder.[19]

32.   Defendants Hamilton and Robles then assisted Plaintiff to his feet.

33.   Defendant McDaniel then arrived in the unit and medically examined Plaintiff.[20]

34.   Plaintiff was standing against the wall when Defendant McDaniel arrived in the unit.

35.   Defendant McDaniel noted that Plaintiff was alert and oriented, but that he had been exposed to pepper spray and that his eyes were red and watery.[21]

36.   Other than this, Defendant McDaniel noted no visible injuries or any other condition requiring medical treatment.[22]

37.   Due to the exposure to pepper spray, Plaintiff was then offered the opportunity to decontaminate in the shower.[23]

38.   Plaintiff declined this offer, responding, "No, I don't want decontamination, I just want to return to my cell and take my nitro."[24]

39.   Plaintiff then denied having any chest pain, stating, "No, I'm not having any pain.  I just want

---

[18]Plaintiff disputes this fact arguing that once he was placed in handcuffs and leg restraints, Defendants Hamilton, Bautista, Robles, Logue, and the unidentified officer began hitting him with their batons.

[19]Plaintiff disputes this fact arguing that Defendants kneeled on Plaintiff's back and neck until Defendants Grandy, McDaniel, and Riddle arrived on the scene.

[20]Plaintiff disputes that he was medically examined.

[21]Plaintiff disputes this fact arguing that he was in pain and having difficulty breathing, but Defendants McDaniel, Grandy, and Riddle ignored his pleas for medical treatment.

[22]Plaintiff disputes this fact arguing that Defendant McDaniel refused to medically examine Plaintiff, but self diagnosed Plaintiff and denied him medical treatment.

[23]Plaintiff disputes this fact arguing that he was never offered an opportunity to decontaminate in the shower, but that Defendants Grandy, Riddle, and McDaniel refused his request to allow him to decontaminate in the shower.

[24]Plaintiff disputes this fact arguing he did not decline to decontaminate in the shower.

1    to return to my cell."[25]

2    40.    Defendant McDaniel noted that Plaintiff was speaking clearly, had no visible signs of

3    respiratory distress, and no visible injuries.[26]

4    41.    Defendants Robles and Hamilton then escorted Plaintiff back to his cell.[27]

5    42.    Defendant McDaniel observed Plaintiff being escorted back to his cell and noted that he was

6    walking without difficulty.[28]

7    43.    Defendant Riddle then gave Plaintiff instructions on how to decontaminate himself inside

8    his cell and stayed there until Plaintiff had done so.[29]

9    44.    Defendant McDaniel then called to the emergency room and reported to the registered nurse

10    on duty that Plaintiff had been exposed to pepper spray.

11    45.    Following the incident, a medical evaluation of Defendant Hamilton found that he had

12    swelling to his right hand.

13    46.    This injury was suffered when he struck this right hand on the floor.[30]

14    47.    Similarly, Defendant Bautista suffered abrasions to both elbows.

15    48.    This injury was suffered when he scraped his elbows on the concrete while trying to gain

16    control of Plaintiff.[31]

17    49.    Defendant Logue was not a participant or witness to this incident involving Plaintiff on

18

---

19    [25] Plaintiff disputes this fact arguing that when he informed Defendants McDaniel, Grandy, and Riddle that

20    he was having chest pain and thought he was having a heart attack they ignored his complaints.

21    [26] Plaintiff disputes this fact arguing that he could hardly breathe and had obvious signs that his spine and ribs were fractured.

22    [27] Plaintiff disputes this fact arguing that he was dragged by the collar of his jumpsuit to his cell.

23    [28] Plaintiff disputes this fact arguing that he was dragged to his cell because he was very ill, delirious with

24    pain, and unable to walk or stand.

25    [29] Plaintiff disputes this arguing that no defendant stayed after he was placed in his cell and he was not given decontamination instructions.

26    [30] Plaintiff disputes this arguing that Defendant Hamilton's hand was injured when he hit Plaintiff in the head

27    and face and slammed him into the wall.

28    [31] Plaintiff disputes this fact arguing that any injuries to Defendant Bautista were through no fault of Plaintiff.

1    September 17, 2004.

2    50.   Plaintiff admits that Defendant Logue "didn't do anything to me" and that "she didn't kick

3          me, punch me."[32]

4    51.   Defendant Cedillos was a witness to the incident on September 17, 2004, but did not himself

5          use any force towards Plaintiff.

6    52.   Similarly, Defendant Riddle responded to the incident on September 17, 2004, but did not

7          himself use any force toward Plaintiff.

8    53.   Plaintiff filed numerous inmate appeals regarding the incident on September 17, 2004.

9    54.   Plaintiff states that he has filed fourteen inmate appeals regarding this incident alone.

10   55.   Plaintiff states that he continues to speak out when he believes his or another inmate's rights

11         have been violated.

12   56.   Based on the incident of September 17, 2004, Plaintiff was charged with and found guilty

13         of the charge of wilfully resisting a peace officer.

14   57.   Plaintiff was assessed ten days confined to quarters status, credit for time served, counseled

15         and reprimanded.

16         **D.    Defendants' Position**

17         Defendants argue that there is no evidence that Defendants Hamilton, Robles, Logue, and

18   Bautista subjected Plaintiff to excessive force in violation of the Eighth Amendment.  There is no

19   evidence that Defendants Riddle and McDaniel were deliberately indifferent to Plaintiff's medical

20   needs in violation of the Eighth Amendment.  There is no evidence to support Plaintiff's claims that

21   Defendants Hamilton, Bautista, Logue, Robles, Cedillos, and McDaniel retaliated against Plaintiff

22   in violation of the First Amendment.  Additionally, Plaintiffs's excessive force and retaliation claims

23   against Defendants Hamilton, Bautista, Logue, Robles, and Cedillos are barred as a judgment for

24   Plaintiff would necessarily imply the invalidity of his prison disciplinary hearing conviction.  Finally,

25   Defendants argue the are entitled to qualified immunity.

26

27   _____

28   [32]Plaintiff disputes this fact arguing that Defendant Logue participated in the attack by using her baton on
     Plaintiff.

1

### E.    Plaintiff's Position

2    Defendants Hamilton, Bautista, Robles, and Rogue used their batons to brutally and viciously

3 beat Plaintiff causing three ribs and his back to be fractured.  Defendants Hamilton, Bautista, Robles,

4 Cedillos, and Logue acted with deliberate indifference when they failed to intervene to protect

5 Plaintiff from the use of excessive force.  Defendants Hamilton, Bautista, Robles, Logue, Riddle,

6 Cedillos, Grandy, and McDaniel acted with deliberate indifference when they denied, delayed, and

7 interfered with Plaintiff receiving medical treatment for his back and rib injuries, and failed to

8 decontaminate him following the application of pepper spray.  Defendants Hamilton, Bautista,

9 Robles, Logue, Riddle, Cedillos, Grandy, and McDaniel violated Plaintiff's First Amendment right

10 to seek redress of grievances without retaliation and due process of law.[33]

11

### F.    Discussion

12

#### 1.    Excessive Force

13    The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners

14 from the use of excessive physical force.  Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175,

15 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S. Ct. 995, 999-1000 (1992).

16 What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at

17 issue, with the objective component being contextual and responsive to contemporary standards of

18 decency.  Hudson, 503 U.S. at 8, 112 S. Ct. at 1000 (quotation marks and citations omitted).  For

19 excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith

20 effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Wilkins, ___

21 U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7, 112 S. Ct. at 7) (quotation marks

22 omitted).

23    Not every malevolent touch by a prison guard gives rise to a federal cause of action.  Wilkins,

24 ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000) (quotation

25

26    [33]Plaintiff is attempting to expand his claims against the named defendants to include failure to protect and due process claims and to expand his deliberate indifference to medical needs to additional named defendants.

27 However, Plaintiff may not now expand the scope of this litigation via his opposition to Defendants' motion for summary judgment.  See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  Plaintiff's

28 claims are confined to those screened and found cognizable by the Court.  (ECF Nos. 20, 27.)

marks omitted).  Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9-10, 112 S. Ct. at 1000) (quotations marks omitted).  In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7, 112 S. Ct. at 999 (quotation marks and citations omitted).

Defendants Hamilton, Robles, Logue, and Bautista argue that the evidence shows that Plaintiff had become dangerously argumentative and belligerent prior to the application of force and that Plaintiff's injuries are inconsistent with the amount of force he claims was used on him. Plaintiff argues that he was complying and did not become belligerent or argumentative and that during the attack his back and ribs were fractured.

Additionally, Defendant Logue, argues that in his deposition Plaintiff stated that Defendant Logue did not touch him, but was responsible for the excessive force because he failed to intervene to protect Plaintiff from the use of force.  Plaintiff states that during the incident in the rotunda Defendant Logue did not touch him, but when they arrived at the cell, Defendant Logue pulled out his baton and participated in beating Plaintiff.

Defendant Logue requests that the court take notice of Plaintiff's contradictory statements in his complaint, opposition, and deposition and determine that Plaintiff is not being truthful.  A party cannot create an issue of fact by a declaration contradicting his or her own deposition or other sworn testimony.  Unless the damaging testimony is shown to have resulted from mistake or confusion, the contradictory declaration creates no genuine issue of fact on a summary judgment motion.  See Cleveland v. Policy Management Systems Corp. 526 US 795, 806, 119 S. Ct. 1597, 1603–1604 (1999) (recognizing, without endorsing, "sham affidavit" holdings in every circuit); Van Asdale v. International Game Tech., 577 F3d 989, 998 (9th Cir. 2009).

Here, Plaintiff submitted the same sworn testimony in his complaint and declaration in opposition to the motion for summary judgment stating that Defendant Logue participated in the

excessive force by beating Plaintiff with his baton.  Plaintiff's deposition testimony, which took place between the two sworn statements states that Defendant Logue did not participate in the beating, but was responsible because he failed to intervene.  It is unclear if the deposition statement is addressing only the incident that occurred on the rotunda or Defendant Logue's overall participation in the events alleged.  Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury functions, not the judge.  Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

There exists a factual dispute regarding whether the use of force was applied in a good faith effort to restore discipline or maliciously and sadistically for the purpose of causing harm.  Wilkins, ___ U.S. at ___, 130 S. Ct. at 1178.  Defendants Hamilton, Robles, Logue, and Bautista motion for summary judgment on Plaintiff's excessive force claim should be denied.

## 2.    Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 U.S. 285, 291 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)).   Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.  "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010);

1   Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful

2   act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused

3   harm, Jett, 439 F.3d at 1096.

4        In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

5   civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

6   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton

7   v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06, 97 S.

8   Ct. at 292.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical

9   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

10  Medical malpractice does not become a constitutional violation merely because the victim is a

11  prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th

12  Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds,

13  WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence

14  is insufficient to establish deliberate indifference to serious medical needs.  See Wood v.

15  Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere disagreement

16  with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891

17  F.2d 240, 242 (9th Cir. 1989).

18       Defendants Riddle and McDaniel argue that they are entitled to summary judgment because

19  Plaintiff informed them that he was not in any pain and had no visible signs of injury.  Defendants

20  state that Plaintiff declined their offers to decontaminate him and told them that he just wanted to

21  return to his cell.  Plaintiff states that he was not alert and oriented, but was moaning, groaning, and

22  having difficulty breathing.  Plaintiff claims that when Defendants Riddle and McDaniel arrived he

23  immediately told them that his ribs and back were fractured, and he was in excruciating pain.

24  Plaintiff alleges he requested to be placed in the shower to be decontaminated, but Defendants

25  refused his request and failed to provide medical treatment.

26       There exists a factual dispute regarding whether Plaintiff was suffering from a serious

27  medical need of which Defendants Riddle and McDaniel were aware and failed to adequately

28  respond.  Simmons, 609 F.3d at 1018.  Defendants Riddle and McDaniel's motion for summary

1  judgment on Plaintiff's deliberate indifference to serious medical needs claim should be denied.

2  ### 3. **Retaliation**

3  An allegation of retaliation against a prisoner's First Amendment right to file a prison

4  grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th

5  Cir. 2003). Retaliation against a prisoner for the exercise of his right to file a grievance is itself a

6  constitutional violation, prohibited as a matter of clearly established law. Pratt v. Rowland, 65 F.3d

7  802, 806 (9th Cir. 1995.) Within the prison context "[a] viable claim of retaliation in violation of

8  the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse

9  action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

10 (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable

11 advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005);

12 accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). The court must "'afford appropriate

13 deference and flexibility' to prison officials in the evaluation of proffered legitimate penological

14 reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515

15 U.S. 472, 482, 115 S. Ct. 2293 (1995)). The burden is on plaintiff to demonstrate "that there were

16 no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

17 Defendants argue that Plaintiff's First Amendment rights were not chilled because he has

18 continued to file grievances, and therefore, they are entitled to summary judgment. However, the

19 correct inquiry is "whether an official's acts would chill or silence a person of ordinary firmness

20 from further First Amendment activities." Rhodes, 408 F.3d at 569 (citations omitted). Plaintiff's

21 allegations that he was beaten and then denied medical treatment for filing grievances are sufficient

22 to show conduct that would chill a person of ordinary firmness from further First Amendment

23 activities.

24 ### a. **Cedillos**

25 Defendant Cedillos argues that the only evidence against him is that he sounded his alarm

26 after Plaintiff slipped free from his handcuffs. This is not adverse action and Defendant Cedillos is

27 entitled to summary judgment.

28 Plaintiff claims that Defendant Cedillos observed Plaintiff being attacked by the defendants,

but did nothing to intervene, and waited to activate his alarm until after Plaintiff was subdued on the ground and had been placed in handcuffs and leg restraints. After the attack was over, Defendant Cedillos told Plaintiff that he got what he deserved for filing lawsuits and grievances against his fellow officers and that is why he allowed Plaintiff to be beaten.

There is a factual dispute as to whether Defendant Cedillos allowed Plaintiff to be attacked by correctional officers in retaliation for Plaintiff filing inmate grievances.

### b.   Defendants Hamilton, Bautista, Robles and Logue

Defendant Logue argues that there is no evidence that she took any action toward Plaintiff on September 17, 2004. Defendants Hamilton, Bautista, and Robles state that the action they took was necessary to restore discipline because Plaintiff slipped out of his handcuffs, became belligerent, and refused to stop resisting once he was taken to the ground. Defendants claim that Plaintiff's claims that Defendants Hamilton, Bautista, and Robles retaliated against him are merely speculative.

Plaintiff contends that Defendant Hamilton told Plaintiff they were going to beat him up, and instructed Defendants Bautista and Robles to remove the handcuffs from Plaintiff. When Plaintiff informed Defendants Hamilton, Bautista, Robles, and Logue not to remove the handcuffs, Defendant Hamilton responded that Plaintiff had been warned what would happen if he continued to file appeals. After the handcuffs were removed, Defendants Hamilton, Bautista, Robles, and Logue assaulted Plaintiff.

While Defendants argue that the use of force was necessary to restore discipline, Plaintiff alleges that the force was unnecessary and only used to punish him for filing grievances. There is a factual dispute as to whether the force used against Plaintiff was a good faith effort to restore discipline or was maliciously applied due to Plaintiff exercising his right to file grievances.

### c.   Defendant Riddle

Defendant Riddle argues that he was nothing more than a responder to the incident and did not use any force against Plaintiff. Defendant Riddle offered to decontaminate Plaintiff, instructed Plaintiff how to decontaminate, and observed Plaintiff until he had decontaminated.

Plaintiff claims that on January 28, 2004, he filed an inmate appeal against Defendant Riddle for participating in an incident in which excessive force was used against Plaintiff. Plaintiff alleges

that due to Plaintiff's filing grievances against the defendants, Defendant Riddle failed to decontaminate Plaintiff after he was pepper sprayed, and Plaintiff was not given decontamination instructions. Plaintiff also claims that, although he told Defendant Riddle that his back and ribs were fractured and he was in excruciating pain, he was denied emergency medical treatment after the assault.

There is a factual dispute as to whether Defendant Riddle failed to decontaminate Plaintiff and provide medical treatment due to Plaintiff having filed inmate grievances.

### d.   **Defendant McDaniel**

Defendant McDaniel argues that she did not take any adverse action against Plaintiff. She responded to the scene to medically evaluate Plaintiff and determine if he required medical care. From what she observed there were no obvious injuries, and Plaintiff stated that he wanted to be returned to his cell.

Plaintiff claims that on January 28, 2004, he filed an inmate appeal against Defendant McDaniel for participating in a prior incident in which excessive force was used against Plaintiff. When Defendant McDaniel responded to the incident at issue here, Plaintiff informed her that his back and ribs were fractured, he was having difficulty breathing, and was in excruciating pain. Plaintiff alleges that because he had previously filed the inmate appeal against Defendant McDaniel, Defendant McDaniel refused to provide emergency medical treatment.

A factual dispute exists as to whether Defendant McDaniel failed to provide medical treatment due to Plaintiff's history of filing inmate grievances.

### e.   **Conclusion**

As previously set forth, the Court is mindful that it must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482). In this instance, however, there exists a factual dispute between the parties over whether the proffered reason for the use of force occurred or if the force was used to retaliate against Plaintiff. Because the evidence set forth by Plaintiff is sufficient to create a triable issue of fact with respect to whether or not Plaintiff was retaliated against for filing complaints against staff, the Court shall recommend

that Defendants Hamilton, Bautista, Logue, Robles, Riddle, Cedillos, and McDaniel's motion for

summary judgment on Plaintiff's retaliation claims be denied.

### 4.    Favorable Termination Rule

Defendants argue that they are entitled to summary judgment because a judgment in

Plaintiff's favor would necessarily imply the invalidity of Plaintiff's disciplinary hearing conviction.

It has long been established that state prisoners cannot challenge the fact or duration of their

confinement in a § 1983 action and their sole remedy lies in habeas corpus relief.  Wilkinson v.

Dotson, 544 U.S. 74, 78, 125 S. Ct. 1242 (2005).  Often referred to as the favorable termination rule,

this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate

the duration of their confinement - either directly through an injunction compelling speedier release

or *indirectly through a judicial determination that necessarily implies the unlawfulness of the State's*

*custody.*"  Wilkinson, 544 U.S. at 81 (emphasis added).  Thus, "a state prisoner's § 1983 action is

barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no

matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement

or its duration."  Id. at 81-82.

Defendants argue that Plaintiff's excessive force and retaliation claims are barred because

finding in Plaintiff's favor would necessarily demonstrate the invalidity of Plaintiff's confinement.

In this instance, Plaintiff was sentenced to ten days confined to quarters status, with credit for time

served after being found guilty in a rule violation hearing of willfully resisting a correctional officer.

Plaintiff was "[a]ssessed ZERO days Forfeiture of Credit due to Lost Time Constraints."  (ECF No.

55-3 at 35.)  Since the sentence imposed upon Plaintiff, after he was found guilty of the rule

violation, did not effect the duration of his confinement, Plaintiff's claims are not barred by the

favorable termination rule.

### 6.    Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity because no official

would reasonably believe that they would violate an inmate's clearly established right by responding

in the manner that the defendants responded.

1   The doctrine of qualified immunity protects government officials from civil liability where

2   "their conduct does not violate clearly established statutory or constitutional rights of which a

3   reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815

4   (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).  In resolving a

5   claim of qualified immunity, courts must determine whether, taken in the light most favorable to the

6   plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was

7   clearly established.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), overruled in

8   part by Pearson, 129 S. Ct. at 813; Mueller v. Auker, 576 F.3d 979, 991, 993 (9th Cir. 2009).  A

9   district court is "permitted to exercise their sound discretion in deciding which of the two prongs of

10  the qualified immunity analysis should be addressed first in light of the circumstances in the

11  particular case at hand." Pearson, 129 S. Ct. at 818.  The inquiry as to whether the right was clearly

12  established is "solely a question of law for the judge." Dunn v. Castro, No. 08-15957, 2010 WL

13  3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d

14  1075, 1085 (9th Cir. 2009)).

15  In this instance, taking the facts in the light most favorable to Plaintiff, Defendants are not

16  entitled to qualified immunity.  While Defendants argue that their actions in responding to Plaintiff

17  were reasonable, Plaintiff alleges that he was complying with Defendants and they assaulted him and

18  denied him medical care because he had filed grievances against prison officials.  Where there are

19  factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary

20  judgment on qualified immunity grounds. See Liston v. County of Riverside, 120 F.3d 965, 967 (9th

21  Cir. 1997); Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1997); Alexander v. City of San

22  Francisco, 29 F.3d 1355, 1364 (9th Cir. 1994).

23  Additionally, it is clearly established the prison officials cannot retaliate against inmates for

24  filing inmate grievances, Pratt, 65 F.3d at 806, use force maliciously and sadistically to cause harm,

25  Wilkins, 130 S.Ct. at 1178, or knowingly deny medical treatment for a prisoner's pain or serious

26  medical need, Jett, 439 F.3d at 1096.  Defendants motion for summary judgment on the grounds of

27  qualified immunity should be denied.

28  ///

20

1

**IV.    Conclusion and Recommendation**

2          For the reasons set forth herein, the Court HEREBY RECOMMENDS that Defendants'

3   motion for summary judgment be DENIED.

4          These findings and recommendations will be submitted to the United States District Judge

5   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

6   days after being served with these findings and recommendations, the parties may file written

7   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

8   Findings and Recommendations."  The parties are advised that failure to file objections within the

9   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

10  1153 (9th Cir. 1991).

11         IT IS SO ORDERED.

12  **Dated:    May 22, 2012              /s/ Barbara A. McAuliffe        **
                                     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28