**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **DONALD GLASS,** | ) | 1:09-CV- 00098  AWI BAM PC |
| | ) | |
| **Plaintiff,** | ) | **PRETRIAL ORDER** |
| | ) | |
| **v.** | ) | **Motions In Limine Hearing:** |
| | ) | **Date:  April 16, 2013** |
| | ) | **Time:  8:30 a.m., Courtroom 2** |
| **J. S. WOODFORD, et al.,** | ) | |
| | ) | **Trial:** |
| **Defendants** | ) | **Date:  April 16, 2013,** |
| | ) | **Time: 8:30 a.m., Courtroom 2** |
| | ) | |

This action proceeds on plaintiff Donald Glass' original complaint filed on January 5, 2009.  Donald Glass, an inmate in the custody of the California Department of Corrections, brings this civil rights action against correctional officials for violations of his civil rights. Various court orders have been issued during the pendency of this action that have narrowed the remaining legal issues for trial to the following:  whether Defendants Hamilton, Robles, Logue and Bautista used excessive force on Plaintiff; whether Defendants Riddle and McDaniel were deliberately indifferent to Plaintiff's serious medical need; and whether Defendants Hamilton, Bautista, Logue, Robles, Riddle, Cedillos and McDaniel retaliated against Plaintiff.

1

The parties have submitted pretrial statements.  Having reviewed the statements and the remainder of the file, the court now issues the Pretrial Order.

## I.    Jurisdiction and Venue

The court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

## II.    Jury Trial

The parties timely requested trial by jury.  This action shall be tried by a jury of eight.

## III.    Facts

### A.    Undisputed Facts

1. Plaintiff was an inmate at the California State Prison - Corcoran (CSP-Corcoran).

2. Defendants Cedillos, Bautista, Hamilton, Robles, Riddle and Logue were correctional officers at CSP-Corcoran in 2004.

3. Defendant McDaniel was a Licensed Vocational Nurse at CSP-Corcoran in 2004.

4. On September 17, 2004, Defendant Cedillos was the control booth officer and mechanically released Plaintiff from his cell so that he could go to the prison's law library.

5. Plaintiff was placed into mechanical restraints and escorted into the rotunda of the housing unit.

### 1.    Plaintiff's Additional Proposed Undisputed Facts

1. At all times during the September 17, 2004 incident, Plaintiff's hands were cuffed behind his back.

2. Defendants Hamilton, Bautista, Robles, Cedillos, Logue and Riddle were issued OC Pepper spry and PR 24 large metal side handle baton weapons.

3. Plaintiff had never fractured a bone in his body prior to his back and three ribs

2

being fractured in multiple places by defendants on September 17, 2004.

4. Plaintiff was on single cell status from September 22, 1997 to August 18, 2008, with no physical contact with other prisoners.

5. In September 2004, Plaintiff was examined by 4B Facility doctor, Thira Komen, M.D., who ordered x-rays taken of Plaintiff's back and ribs.

6. Dr. Komen informed Plaintiff that x-rays and x-ray reports showed that Plaintiff's back and three ribs had recently been fractured irreparably in multiple places.

7. During a personal audio taped interview on October 7, 2004, Plaintiff described the September 17, 2004 incident and informed Facility 4B Captain R. Lopez that Defendants Hamilton, Bautista, Robles and Logue used their PR 24 metal bats to fracture Plaintiff's back and ribs.

8. On October 18, 2004, Captain R. Lopez had Plaintiff sign a CDC-Form Authorization to Release Medical Records.

B.    Disputed Facts

1. Whether Defendants Hamilton, Bautista, Robles and Logue used excessive force on Plaintiff.

2. Whether Defendant Logue was a participant or witness to the incident involving Plaintiff on September 17, 2004.

3. Whether Defendant Cedillos was merely a witness to the incident and did not himself use any force towards Plaintiff on September 17, 2004.

4. Whether Defendant Riddle merely responded to the incident on September 17, 2004, but did not himself use any force towards Plaintiff.

5. Whether, as the Defendants claim, their actions towards the Plaintiff on September 17, 2004, were made necessary by Plaintiff's threatening and resistive behavior.

6. Whether Plaintiff informed Defendants McDaniel and Riddle that Plaintiff was in excruciating pain in his back/ribs and was having extreme difficulty breathing.

3

7.  Whether Plaintiff asked Defendants McDaniel and Riddle to see a medical doctor because he believed that his back or ribs were fractured.

8.  Whether Defendants McDaniel and Riddle ignored Plaintiff's requests to see a medical doctor because of chest pains.

9.  Whether Defendants McDaniel and Riddle denied Plaintiff's request to take a shower to decontaminated from OC pepper spray exposure.

10.  Whether Defendants McDaniel and Riddle instructed Plaintiff on how to decontaminate himself from OC pepper spray exposure.

11.  Whether, as the Plaintiff claims, the Defendants' actions towards the Plaintiff on September 17, 2004, were motivated out of a desire to retaliate for the Plaintiff's many inmate appeals he previously filed.

1.      Plaintiff's Additional Disputed Facts

1.  Whether Defendant Hamilton was upset, hostile and yelling at Plaintiff prior to placing Plaintiff's hands/wrists in cuffs behind his back.

2.  Whether Defendant Hamilton, without provocation, grabbed Plaintiff in a choke hold and then violently slammed Plaintiff to the ground the 4B2R rotunda area.

3.  Whether Defendants Hamilton, Bautista, Robles and Logue attacked and beat Plaintiff while he was inert and subdued on the ground.

4.  Whether Plaintiff's hands are small enough to slip the cuffs off of his wrists.

5.  Whether Defendant Cedillos had his automatic mini-14 machine gun pointed at Plaintiff's head at all times during the September 17, 2004 incident.

6.  Whether Defendant Hamilton instructed Defendants Bautista and Robles to remove the cuffs from Plaintiff's wrists.

7.  Whether Defendant Hamilton stated to Plaintiff, while he was pinned against the wall, that they were going to take the cuffs off of Plaintiff's wrists and beat his ass with their PR 24 mental bats as punishment for Plaintiff filing prison grievances against them.

4

8.   Whether Defendants ignored Plaintiff's plea not to remove the cuffs from his wrists and to place Plaintiff in his cell.

9.   Whether Plaintiff had a cuff dangling from his wrist or no cuffs prior to Defendants beating him to the ground with their PR 24 batons and then reapplying the cuffs on each wrist to allow them to use their PR 24 baton weapons to fracture Plaintiff's ribs in his back.

10.   Whether Plaintiff informed Defendants McDaniel and Riddle, when they arrived on the scene, that Defendants Hamilton, Bautista, Robles and Logue used the PR 24 baton weapons to beat and fracture Plaintiff's back or ribs.

11.   Whether Defendants dragged Plaintiff inside the cell in a prone position with a triangle lanyard attached to the cuffs behind his back.

2.   Defendants' Additional Disputed Facts

1.   As Defendants Bautista, Hamilton and Plaintiff walked to the yard door, Plaintiff became disruptive, agitated, belligerent, and resistive towards Defendant Hamilton.

2.   Plaintiff stated to the escorting officers "why don't you suck my nuts" and "you shut the fuck up."

3.   Defendant Hamilton had a hold of Plaintiff's left elbow with his right hand.

4.   Plaintiff attempted to pull away from Defendant Hamilton's grip.

5.   Defendant Hamilton ordered Plaintiff to stop resisting.

6.   Defendant Hamilton ordered Plaintiff to return to his cell due to his disruptive behavior, and Plaintiff complied with this order.

7.   Defendants Bautista and Hamilton escorted Plaintiff back to his cell.

8.   Due to Plaintiff's behavior, Defendant Robles followed Defendants Hamilton and Bautista as they escorted Plaintiff back to his cell.

9. As Plaintiff and the officers were standing in front of Plaintiff's cell, waiting for the cell door to open, Plaintiff slipped his right hand out of the handcuffs and suddenly turned to his left side to confront Defendant Hamilton.

5

10. Defendant Hamilton grabbed Plaintiff around the upper torso with both arms and forced Plaintiff to the ground face-down.

11. Defendant Cedillos activated his personal alarm, opened the yard door, and waited for responding staff.

12. Defendant Riddle responded to the personal alarm and came to the housing unit.

13. Once on the ground, Plaintiff was swinging his arms and kicking his feet.

14. Plaintiff grabbed Defendant Robles' right leg and ankle with both hands.

15. Defendant Robles issued numerous orders to Plaintiff to place his hands behind his back and consent to being placed into handcuffs.

16. When Defendant Robles' orders to Plaintiff were unsuccessful in gaining Plaintiff's compliance, Defendant Robles administered one three-second burst of pepper spray into Plaintiff's facial area.

17. Plaintiff then let go of Defendant Robles' ankle and complied with instructions to stop struggling.

18. Defendant Robles grabbed Plaintiff's right wrist with both hands.

19. Defendant Bautista obtained control of Plaintiff's left hand, which still had the handcuff on it.

20. Defendant Hamilton maintained control of Plaintiff's upper body.

21. Defendant Bautista re-applied the handcuff to Plaintiff's right wrist.

22. Defendant Hamilton took control of Plaintiff's left biceps with his right hand.

23. Defendant Robles placed his left hand on Plaintiff's right biceps and he placed his right hand on Plaintiff's right shoulder.

24. Defendants Hamilton and Robles assisted Plaintiff to his feet.

25. Defendant McDaniel, a Licensed Vocational Nurse, arrived in the unit and medically examined Plaintiff.

26. Plaintiff was standing against the wall when Defendant McDaniel arrived in the unit.

27. Defendant McDaniel noted that Plaintiff was alert and oriented but that he had been exposed to pepper spray and that his eyes were red and watery.

28. Defendant McDaniel noted no other visible injuries or any other condition requiring medical treatment.

29. Due to the exposure to pepper spray, Plaintiff was offered the opportunity to decontaminate in the shower.

30. Plaintiff declined the offer to decontaminate, responding "No I don't want decontamination, I just want to return to my cell and take my nitro."

31. Plaintiff denied having any chest pain, stating "No, I'm not having any pain. I just want to return to my cell."

32. Defendant McDaniel noted that Plaintiff was speaking clearly, had no signs of respiratory distress, and no visible injuries.

33. Defendants Robles and Hamilton escorted Plaintiff back to his cell.

34. Defendant McDaniel observed Plaintiff being escorted back to his cell and noted that he was walking without difficulty.

35. Defendant Riddle gave Plaintiff instructions on how to decontaminate himself inside his cell and stayed there until Plaintiff had done so.

36. Defendant McDaniel called the emergency room and reported to the registered nurse on duty that Plaintiff had been exposed to pepper spray.

37. Following the incident, a medical evaluation of Defendant Hamilton found that he had swelling to his right hand, suffered when he struck his right hand on the floor.

38. Defendant Bautista suffered abrasions to both elbows when he scraped them on the concrete while trying to gain control of GLASS.

C.      Disputed Evidentiary Issues

1   Disputed evidentiary issues will be addressed by motions in limine.

2       D.      Special Factual Information

3       Pursuant to Local Rule 281(b)(6), the following special factual information pertains to

4   this action:

5           None applicable.

6

7   **IV.    Relief Sought**

8       Plaintiff seeks actual and punitive damages, along with costs of suit.  He also seeks a

9   declaratory judgment, an order to notify the U.S. Department of Justice for federal criminal

10  prosecution for deprivation of rights, and injunctive relief in the form of future medical

11  treatment, a pain management specialist and a spine neurologist.

12      Declaratory Relief

13      "A declaratory judgment, like other forms of equitable relief, should be granted only as a

14  matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of

15  Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will

16  neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate

17  the proceedings and afford relief from the uncertainty and controversy faced by the parties."

18  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event the jury returns a

19  verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were

20  violated.  Accordingly, a declaration that Defendants violated Plaintiff's rights is unnecessary.

21      Injunctive Relief

22      Plaintiff seeks an injunction ordering future medical treatment, a pain management

23  specialist and a spine neurologist.  The Prison Litigation Reform Act places limitations on

24  injunctive relief.  Section 3626(a)(1)(A) provides in relevant part, "[p]rospective relief in any

25  civil action with respect to prison conditions shall extend no further than necessary to correct the

26  violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or

27

28                              8

1  approve any prospective relief unless the court finds that such relief is narrowly drawn, extends

2  no further than necessary to correct the violation of the Federal right, and is the least intrusive

3  means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).

4  Plaintiff's requested injunctive relief is not narrowly drawn, it extends further than necessary to

5  correct any alleged violation of his Federal rights and is not the least intrusive means to correct

6  the violation.

7          Further, since Plaintiff is no longer incarcerated at CSP-Cor, the purported injunctive

8  relief he is seeking at that facility is moot.  Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001);

9  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th

10  Cir. 1991).

11          Plaintiff's request for injunctive relief is DENIED.

12          Notification of U.S. Attorney

13          The Court does not provide such notification following judgment in a civil rights action.

14  Plaintiff's request for such notification is DENIED.

15          Defendants will seek costs and attorneys fees if they prevail at trial.

16  ///

17  ///

18

19  **V.    Points of Law**

20          **A.    Imposition of Liability Under Section 1983**

21          Under section 1983, Plaintiff is required to prove that each defendant (1) acted under

22  color of state law and (2) deprived him of rights secured by the Eighth Amendment of the United

23  States Constitution.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

24  Plaintiff must prove that each defendant personally participated in the deprivation of his rights.

25  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no *respondeat superior* liability

26  under section 1983, and each defendant is only liable for his own misconduct.  Ashcroft v. Iqbal,

27

28                                          9

556 U.S. 662, 677, 129 S. Ct. 1937, 1948-49 (2009).

**B.**     **Eighth Amendment - Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual
Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson
v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is
. . . contextual and responsive to contemporary standards of decency." Id. (internal quotation
marks and citations omitted).  The malicious and sadistic use of force to cause harm always
violates contemporary standards of decency, regardless of whether or not significant injury is
evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth
Amendment excessive force standard examines *de minimis* uses of force, not *de minimis*
injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause
of action." Hudson, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and unusual
punishments necessarily excludes from constitutional recognition *de minimis* uses of physical
force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id.
at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation
of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was
applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to
cause harm." Id. at 6-7.  "In determining whether the use of force was wanton and unnecessary, it
may also be proper to evaluate the need for application of force, the relationship between that
need and the amount of force used, the threat reasonably perceived by the responsible officials,
and any efforts made to temper the severity of a forceful response." Id. at 7  (internal quotation
marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth
Amendment inquiry, but does not end it." Id.

**C.**     **Deliberate Indifference to Serious Medical Needs**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual

punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 U.S. 285, 291 (1976)). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837, 114 S. Ct. at 1979. "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06, 97 S.Ct. at 292. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation

11

merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

### D.   First Amendment Retaliation

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Retaliation against a prisoner for the exercise of his right to file a grievance is itself a constitutional violation, prohibited as a matter of clearly established law. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995.) Within the prison context "[a] viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482, 115 S. Ct. 2293 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

### D.   Punitive Damages

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a

12

preponderance of the evidence.  NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008).

The jury must find that Defendants' conduct was "motivated by evil motive or intent, or . . .

involves reckless or callous indifference to the federally protected rights of others."  Smith v.

Wade, 461 U.S. 30, 56 (1986).

## VI.     Abandoned Issues

None applicable.

## VII.    Witnesses

The following is a list of witnesses that the parties expect to call at trial, including

rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS

SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON

A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST

INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

### A.     Plaintiff's Witnesses

1. Defendant Hamilton

2. Defendant Bautista

3. Defendant Robles

4. Defendant Cedillos

5. Defendant Logue

6. Defendant Riddle

7. Defendant McDaniel

8. L. Watson, Chief Deputy Warden

9. R. Halberg, Facility Captain

10. R. Lopez, Facility Captain

11. D. Indendi, Corrections Lieutenant

12. T. S. Huo, Radiologist

13. Inmate E. Jackson

14. Inmate B. Ransom

15. Inmate L. Rencher

16. D. D. Sheppard-Brooks

**B.      Defendants' Witnesses**

1. Defendant Hamilton

2. Defendant Bautista

3. Defendant Logue (Blevins)

4. Defendant Robles

5. Defendant Cedillos

6. Defendant McDaniel

7. Defendant Riddle

8. Sergeant Eric Lawton, CSP-Corcoran

9. Registered Nurse M. Martinez, CSP-Corcoran

10. Registered Nurse Maxine, CSP-Corcoran

11. Dr. Reynolds, CSP-Corcoran

12. Dr. Thirakomen, CSP-Corcoran

13. Family Nurse Practitioner A. Gage, CSP-Corcoran

14. Dr. Friedman, CSP-Corcoran

15. Dr. Neubarth, CSP-Corcoran

16. Family Nurse Practitioner Anitra, CSP-Corcoran

Defendants also state that they wish to call the unidentified Custodian of Records for plaintiff's CDCR medical chart and central file. Because defendants have not identified the name of the witness, defendants may not offer substantive testimony from the witness. If defendants wish to offer the unidentified witness solely to authenticate documents, defendants

may use the witnesses identified only by title for that limited purpose.

///

///

## VIII.   **Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

A.      Plaintiff's Exhibits

1.  Radiology report of spine and skull dated 12/24/97 from California Medical Facility

2.  Radiology report of cervical spine dated 12/8/98 from San Quentin State Prison

3.  Radiology report of lower left rib cage dated 9/23/04 by radiologist Tsung-Yi Stephen Huo at CSP-Corcoran

4.  CDCR 7230 Form Nurses Progress Notes from CSP-Corcoran dated 9/18/04

5.  CDCR 7254 Form Outpatient Interdisciplinary Progress Notes from CSP-Corcoran by Dr. K. Thirakomen, M.D. on 9/21/04

6.  CDCR 114A Form Inmate Segregation Record of Daily Activity dated 9/12/04 through 9/21/04

7.  CDCR 114A Form Inmate Segregation Record of Daily Activity dated 10/1/04 through 10/09/04

8.  CDCR 7385 Form California Youth and Adult Corrections Agency Authorization to Release Medical, Psychiatric, AIDS/ARE, Alcohol or Drug Abuse Patient Records dated 9/16/04 signed by R. Lopez

9.  Memorandum on zero tolerance regarding the "code of silence" dated 2/17/04 by R. Q.

15

Hickman

     10.  Radiology report of cervical spine dated 5/20/05 by Radiologist Tsung-Yi Stephen Huo

     11.  Retire Warden whistle blower on (CDCR) and the California Correctional Peace officers Association (CPOA) corrupt influence, intimidation and retaliation on its union members who break or think about breaking the (criminal) "code of silence"

     12.  CDCR/CSP-COR Procedure on the use of the PR 24 side handle baton

     13.  CDCR/CSP-COR Use of Force Review Committee (Instructional Memo #3) pp. 1-4

     14.  Memorandum on use of force video tapes, 837 A - Information

     15.  CSP-COR Supplemental of DOM 51030.3.1 Reporting the Processing of CDCR 837 form

     16.  CDCR Memorandum to facility managers instructing them to take photos of all victims and weapons used by employees involved in any use of force

     17.  CDCR Use of Force Review Committee (Instructional Memorandum #4) pp. 1-4

     18.  CDCR Memorandum for Oleoresin Capsicum Aerosol Evaluation

     19.  CDCR Use of Force Review Committee (Instructional Memorandum #5)

     20.  CDCR Memorandum on proper procedure on decontamination

     21.  Two page letter to Inspector General Matthew L. Cate regarding the 9/17/04 beating

     22.  Response by Office of Inspector General (OIG) regarding the 9/17/04 beating

     23.  Response from OIG to a second letter regarding the 9/17/04 beating

     24.  Two page investigative report regarding the 1/18/04 unnecessary excessive force by Defendants Riddle and McDaniel in support of their retaliatory denial and refusal of medical care on 9/17/04

     25.  CSP-Cor memorandum for Licensed Vocational Nurses (LVNs) to note whether or not a prisoner refused a CDCR-7219 evaluation

     26.  Three page letter to CSP-Corcoran Investigative Security Unit ("ISU")/Internal

Affairs ("IA") that alleges excessive force, deliberate indifference against Defendants Riddle and McDaniel on 1/18/04

27. Verified declaration of Donald Glass

28. Verified declaration of Steven Coeville

29. Verified declaration of James Evans

30. Verified declaration of Lamonte Rencher

31. Verified Declaration of James A. Diesso

32. Verified 602 Appeal No CSP-C-6-04-0501

33. Verified 602 Appeal dated 3/16/04

34. Verified 602 Appeal No. CSP-C-604-1574

35. Verified 602 Appeal No. CSP-C-5-04-1574

35. Verified 602 Appeal No. CSP-C-6-04-2853

36. Verified 602 Appeal No. CSP-C-6-04-3670

37. Verified 602 Appeal No. CSP-C-5-04-3780

38. Verified 602 Appeal No. CSP-C-5-04-4691

39. Verified 602 Appeal No. CSP-C-5-05-3722

40. Personnel file of Defendant Hamilton

41. Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04 excessive force investigation against Defendant Bautista

42. Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04 excessive force investigation against Defendant Robles

43. Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04 excessive force investigation against Defendant Logue

44. Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04 excessive force investigation against Defendant Cedillos

45. Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04

excessive force investigation against Defendant Riddle

46.   Personnel file of CDCR-OIA and CSP-Cor-IA findings pertaining to 9/17/04 excessive force investigation against Defendant McDaniel

47.   Excessive force interview camcorder/CD videotape recording dated 10/14/07

48.   X-ray films of cervical spine dated 12/07/98

49.   X-ray films of left lower rib cage dated 9/23/04

50.   X-ray film of spine dated 05/20/05

51.   PR 24 Side Handle Baton

52.   A pair of hinged handcuffs

53.   An audiotape/CD recording of the voice stress analysis polygraph test conducted by OIA Captain Mason in late 2004 or early 2005

54.   Audiocassette tape recording conducted by R. Lopez in 10/04


B.      Defendants' Exhibits

1. Crime/Incident report, including supplements and staff reports, Log No. COR-04B-04-09-0495

2. Medical report of injury or unusual occurrence regarding Plaintiff, dated September 17, 2004

3. Medical report of injury or unusual occurrence regarding Defendant Hamilton, dated September 17, 2004

4. Medical report of injury or unusual occurrence regarding Defendant Bautista, dated September 17, 2004

5. Pertinent portions of plaintiff's Unit Health Records

6. Nurses progress notes regarding Plaintiff, dated September 17, 2004

7. Physician's orders regarding Plaintiff, dated September 17, 2004

8. Nurses progress notes regarding Plaintiff, dated September 18, 2004

9. Progress notes regarding Plaintiff, dated September 21, 2004

10. Physician's orders regarding Plaintiff, dated September 21, 2004

11. Radiology report regarding Plaintiff, dated September 24, 2004

12. Progress notes regarding Plaintiff, dated October 8, 2004

13. Physician's orders regarding Plaintiff, dated October 8, 2004

14. Emergency care flow sheet regarding Plaintiff, dated October 14, 2004

15. Progress notes regarding Plaintiff, dated October 14, 2004

16. Physician's orders regarding Plaintiff, dated October 14, 2004

17. Progress notes regarding Plaintiff, dated November 30, 2004

18. Physician's orders regarding Plaintiff, dated November 30, 2004

19. Health care services request form regarding Plaintiff, dated April 24, 2005

20. Health care services request form regarding Plaintiff, dated May 5, 2005

21. Progress notes regarding Plaintiff, dated May 12, 2005

22. Physician's orders regarding Plaintiff, dated May 12, 2005

23. Physician's request for services regarding Plaintiff, dated May 12, 2005

24. Radiology report regarding lumbosacral spine regarding Plaintiff, dated May 20, 2005

25. Radiology report regarding cervical spine regarding Plaintiff, dated May 20, 2005

26. Progress notes regarding Plaintiff, dated June 9, 2005

27. Physician's orders regarding Plaintiff, dated June 9, 2005

28. Physician's request for services regarding Plaintiff, dated June 9, 2005

29. Specialty consult progress notes regarding Plaintiff, dated June 9, 2005

30. Progress notes regarding Plaintiff, dated June 27, 2005

31. Radiology report regarding Plaintiff, dated July 22, 2005

32. Progress notes regarding Plaintiff, dated August 11, 2005

33. Physician's orders regarding Plaintiff, dated August 11, 2005

34. Progress notes regarding Plaintiff, dated September 19, 2005

35. Physician's orders regarding Plaintiff, dated September 21, 2005

36. Pain consultation record regarding Plaintiff, dated September 21, 2005

37. Progress notes regarding Plaintiff, dated November 17, 2005

38. Physician's orders regarding Plaintiff, dated November 17, 2005

39. Progress notes regarding Plaintiff, dated December 12, 2005

40. Physician's orders regarding Plaintiff, dated December 12, 2005

**IX.    Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)**

No party indicates that any specific answers to interrogatories or any responses to requests for admission will be offered at trial.

**X.    Further Discovery or Motions**

Plaintiff contends that the Court abused its discretion in denying his motion to amend the complaint and in denying his motion to modify the discovery and scheduling order to allow further discovery past the time for filing his motion for summary judgment. Plaintiff does not specify any proposed amendment to his complaint or any additional discovery that he currently is seeking.

On September 13, 2010, the Court issued a Scheduling Order setting the deadline to amend pleadings as March 13, 2011, and the deadline to complete discovery as May 13, 2011. (ECF No. 34.)  The Court denied Plaintiff's motions to modify the scheduling order to extend the deadline to file an amended complaint and the deadline to complete discovery on September 1, 2011.  (ECF No. 59.)  There is no indication that Plaintiff renewed his motions to modify the scheduling order after that date.

Modification of the scheduling order requires a showing of good cause, Fed. R. Civ. P. 16(b), and good cause requires a showing of due diligence, Johnson v. Mammoth Recreations,

20

Inc., 975 F.2d 604, 609 (9th Cir. 1992).  If the party seeking to amend the scheduling order fails to show diligence, then the inquiry should end and the court should not grant the motion to modify.  Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002). Plaintiff has made no showing of diligence in seeking to amend the scheduling order to either amend his complaint or to conduct further discovery.  To the extent Plaintiff requests modification of the scheduling order, his request is DENIED.

Even though discovery is closed, all parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(2).

If any party intends to file motions in limine, the procedure and time requirements are set forth below.

///

## XI.    Stipulations

Plaintiff has requested stipulations, however, Defendants have not offered to stipulate to any matter at issue.


## XII.    Amendments/Dismissals

The Court has dismissed former defendant Grandy from this action because Plaintiff did not provide sufficient information to effectuate service of process.


## XIII.    Settlement Negotiations

Plaintiff reports that the parties are engaged in settlement discussions.  The parties are amenable to a settlement conference.

**XIV.** **Agreed Statement**

Plaintiff believes that a presentation of some or all of the evidence by agreed statement is feasible or advisable. Defendants do not believe that a presentation of some or all of the evidence by agreed statement is feasible or advisable.

**XV.** **Separate Trial Of Issues**

The punitive damages phase, if any, will be bifurcated.

**XVI.** **Impartial Experts - Limitation Of Experts**

Plaintiff asks the Court to appoint an expert witness or, in the alternative, provide him the names and addresses of expert witnesses in the fields of excessive force and great bodily injury. Defendants do not believe this case warrants the appointment of an impartial expert.

Federal Rule of Evidence 706(a) provides that "[t]he court may order the parties to show cause why expert witnesses should not be appointed. . . ." Fed. R. Evid. 706(a); Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999). The instant action involves allegations of excessive force and deliberate indifference in violation of the Eighth Amendment and retaliation in violation of the First Amendment. These issues are not so complex as to require the testimony of an expert witness. Plaintiff's request for the appointment of an expert witness is DENIED.

**XVII.** **Attorneys' Fees**

Plaintiff is proceeding pro se and is not entitled to attorney's fees. Defendants will seek attorneys fees if Defendants prevail at trial.

**XVIII.** **Further Trial Preparation**

A.    Motions In Limine Hearing and Briefing Schedule

Any party may file a motion in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n. 4 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997).  The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  Id; Hawthorne Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party or parties, and filed with the court, by March 18, 2013. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party or parties, and filed with the court, by April 1, 2013.

If any party files a motion in limine, the court will hear and decide such motions on the morning of trial at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

B.    Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than February 25, 2013, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.    Counsel shall create four (4) complete, legible sets of exhibits in binders as
       follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff April 11, 2013, one for use by the Courtroom Clerk and the other for the court; and

(b) One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a) Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b) As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c) Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked

24

1   appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants'

2   Exhibit C - For Identification, and indexed in a third column entitled

3   "Other Objection" on the offering party's index.

4   3.   Each separate index shall consist of the exhibit number or letter, a brief

5   description of the exhibit, and the three columns outlined above, as demonstrated

6   in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the

Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.

If any document is offered into evidence that is partially illegible, the court may sua sponte

exclude it from evidence.

C.   Discovery Documents

By April 11, 2013, each party shall file a list of all discovery documents the party intends

to use at trial.  The list shall indicate whether each discovery document has previously been

lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall

so lodge the document with the Courtroom Clerk by April 11, 2013.

D.   Trial Briefs

The parties are directed to file and serve a Trial Brief by April 3, 2013.  Local Rule 285.

The parties need not include in the Trial Brief any issue that is adequately addressed in a motion

in limine, or in an opposition brief to a motion in limine.

E.   Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by 4:00 p.m. on

Thursday, April 11, 2013.  Further, in order to aid the court in the proper voir dire examination of

25

the prospective jurors, the parties should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that the parties reasonably expect to call. The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

F.   Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by 4:00 p.m. on Thursday, April 11, 2013.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

G.   Proposed Jury Instructions

The parties shall file and serve proposed jury instructions by 4:00 p.m. on Thursday, April 11, 2013).  Electronic filers shall also attach a copy of their proposed jury instructions to an e-mail, which the party shall send to:  awiorders@caed.uscourts.gov.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer after the trial confirmation hearing to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

H.   Proposed Verdict Form

The parties shall file and serve a proposed verdict form by 4:00 p.m. on Thursday, April 11, 2013.

I.     Use Of Videotape and Computers

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on Thursday, April 11, 2013.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

J.     Morning Conferences During Trial

During the trial, it is the obligation of the parties to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by Plaintiff and counsel will eliminate the need for that result.

K.     Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the

continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

**XIX.   Objections to Pretrial Order**

Any party may, within ten (10) calendar days after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

**XX.   Miscellaneous Matters**

None.

**XX.   Rules of Conduct During Trial**

A.   Jury Selection

1.   All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.   All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.   Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.   Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.   Jury Selection

1.   The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief

28

direct questioning by counsel.

C.    <u>Opening Statements</u>

1.    Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.    <u>Case in Chief</u>

1.    Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.    At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.    <u>Witnesses</u>

1.    Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.    Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.    <u>Exhibits</u>

1.    All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.    An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.    The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G.    <u>Objections</u>

1.    No speaking objections or arguments are permitted in the presence of the jury.

Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.      The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H.      Closing Argument

1.      Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:    February 15, 2013                          _____

                                                                    SENIOR  DISTRICT  JUDGE

30